**Affirmed and Opinion Filed July 1, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-00892-CV**

**AMERICAN HERITAGE CAPITAL, LP, Appellant/Cross-Appellee**
**V.**
**ALAN GONZALEZ, Appellee, and DINAH GONZALEZ, Cross-Appellant**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-13741**

## OPINION

Before Justices FitzGerald, Francis, and Fillmore
Opinion by Justice FitzGerald

American Heritage Capital, LP sued Alan and Dinah Gonzalez for defamation and tortious interference with prospective business relationships. AHC nonsuited its claims against Dinah. The trial judge dismissed AHC's claims against Alan based on Alan's motion to dismiss under the Citizens Participation Act, Chapter 27 of the Texas Civil Practice and Remedies Code. The judge later awarded Alan attorneys' fees and a $15,000 sanction. AHC appeals. Dinah cross-appeals the trial judge's failure to hold a hearing on her motion to dismiss under Chapter 27. We affirm the judgment.

### I. BACKGROUND

AHC alleged the following facts in its live pleading. AHC is an online mortgage lender. Dinah contacted AHC in August 2011 about obtaining a home loan. According to AHC, Dinah

misrepresented certain information in her application and delayed in providing certain required information and documentation to AHC, delaying the process. AHC's loan commitment to Dinah expired on October 14, 2011, before Dinah and the seller of the house in question could close the sale. After that date, AHC informed Dinah that it would not be able to fund the loan because AHC had not received all necessary documents and information from her. Defamatory statements about AHC began to appear on several websites.

AHC sued Dinah for defamation and tortious interference on October 27, 2011. Dinah filed a motion to dismiss the case based on the recently enacted Chapter 27 of the civil practice and remedies code.

Chapter 27 creates an early-dismissal mechanism intended to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while simultaneously protecting the rights of persons with meritorious claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West Supp. 2013). Statutes like Chapter 27 are commonly known as "anti-SLAPP statutes" because they are intended to curb "strategic lawsuits against public participation." *See generally* Dena M. Richardson, Comment, *Power Play: An Examination of Texas's Anti-SLAPP Statute and Its Protection of Free Speech Through Accelerated Dismissal*, 45 ST. MARY'S L.J. 245, 246–48, 252–55 (2014) (discussing the rise of anti-SLAPP legislation).

In her motion to dismiss, Dinah asserted that her husband Alan had posted the internet statements in question. AHC then filed its first amended petition adding Alan as a defendant. Alan filed his own motion to dismiss under Chapter 27. AHC nonsuited its claims against Dinah soon thereafter.

On March 5, 2012, the trial judge held a hearing on Alan's motion to dismiss. On March 6, the judge signed an order granting the motion to dismiss and setting a hearing for March 9 to

determine the amount of damages and costs to be awarded against AHC. That hearing was postponed to March 30, and it took place over three separate days (March 30, April 5, and April 13). On April 14, 2012, the judge signed a judgment awarding Alan attorneys' fees of $15,616, plus additional amounts as conditional appellate fees, and a sanction of $15,000.

AHC filed a request for findings of fact and conclusions of law on May 3 and a motion for new trial on May 11. The judge signed findings of fact and conclusions of law on June 5. AHC filed its notice of appeal on June 11. Dinah filed a notice of cross-appeal on June 25.

AHC has filed a motion to dismiss Dinah's cross-appeal as untimely filed.

## II. APPELLATE JURISDICTION

AHC raises two arguments that challenge our jurisdiction over this appeal. First, in AHC's second issue on appeal, AHC argues that the March 6 order granting Alan's motion to dismiss was a final judgment and that the April 14 final judgment is therefore void because it was signed after the trial judge had lost plenary power. If AHC is correct that the March 6 order was a final judgment, it necessarily follows that AHC's and Dinah's notices of appeal were untimely filed, and we must dismiss the appeal. Second, in its motion to dismiss Dinah's cross-appeal, AHC argues that Dinah's notice of appeal was untimely in any event because her notice-of-appeal deadline began to run either on January 18, 2012, when her motion to dismiss was supposedly denied by operation of law, or on January 30, when the trial judge signed the order granting AHC's nonsuit of its claims against Dinah.

### A. Jurisdiction over the appeal as a whole

Appellate jurisdiction is never presumed; if the record does not affirmatively demonstrate that appellate jurisdiction is proper, the appeal must be dismissed. *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex. App.—Dallas 2009, no pet.). A timely notice of appeal is a jurisdictional prerequisite. *Raulston v. Progressive Ins. Co.*, 115 S.W.3d 803, 804

(Tex. App.—Dallas 2003, no pet.) (per curiam). Generally, the notice of appeal is due thirty days after the judgment is signed if the time is not extended by the timely filing of certain postjudgment documents. *See* TEX. R. APP. P. 26.1(a).

The general rule, which governs AHC's appeal in this case, is that an appeal may be taken only from a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). "A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Id.* (footnote omitted). If, as in this case, there has not been a conventional trial on the merits, we do not presume that a judgment is final. *See id.* at 199–200. "[A]n order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Id.* at 205. There must be a "clear indication that the trial court intended the order to completely dispose of the entire case." *Id.*; *accord Straza v. Friedman, Driegert & Hsueh, L.L.C.*, 124 S.W.3d 404, 406 (Tex. App.—Dallas 2003, pet. denied). If there is any doubt as to a judgment's finality, the question must be resolved by determining the trial court's intention as gathered from the language of the order and the record as a whole, "'aided on occasion by the conduct of the parties.'" *Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010) (per curiam) (quoting *Lehmann*, 39 S.W.3d at 203). "The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself." *Lehmann*, 39 S.W.3d at 200.

The pertinent facts follow. AHC's live pleading included claims against both Dinah and Alan. Dinah and Alan did not file answers; instead they each filed a motion to dismiss under Chapter 27. In their motions, Dinah and Alan sought not only dismissal of the action but also court costs, attorneys' fees, expenses, and sanctions. On January 30, 2012, the trial judge granted AHC's partial nonsuit and dismissed AHC's claims against Dinah. After hearing Alan's

motion to dismiss on March 5, the trial judge signed the March 6 order, reciting that Alan's motion to dismiss "is hereby granted and this action is dismiss[ed] against Defendant, Alan Gonzalez, with prejudice to its refiling." The order did not dispose of Alan's request for costs, fees, and sanctions. To the contrary, in the last paragraph of the March 6 order, the judge set a hearing on March 9 "to determine the damages and costs to be awarded Defendant, Alan Gonzalez, pursuant to § 27.009 of the Texas Civil Practice and Remedies Code." The word "final" does not appear in the order, nor does the order contain a statement that it finally disposes of all claims and all parties. Further, the parties and the trial judge did not treat the March 6 order as a final judgment because they continued to litigate the case more than thirty days after the signing of that order without the filing of a deadline-extending motion under Texas Rule of Civil Procedure 329b. Indeed, on March 26 the trial judge signed an order setting the case for trial in October 2012.

The March 6 order does not appear to be a final judgment under *Lehmann*. It does not contain a clear indication that the trial judge intended it to dispose of the whole case, *see Lehmann*, 39 S.W.3d at 205, nor is such an intent "unequivocally expressed in the words of the order itself," *id*. at 200. Although the order dismisses AHC's action against Alan, it also sets a future hearing to determine the "damages and costs" to be awarded to Alan "pursuant to § 27.009." "Damages and Costs" is the title of section 27.009, and the phrase encompasses not only court costs but also attorneys' fees and sanctions. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1)–(2) (West Supp. 2013). Thus, the order indicates that the trial judge intended for it not to dispose of the entire case, which tends to show that it is not a final judgment under *Lehmann*. This case is comparable to *Interhealth, Inc. v. Insite Clinical Research, LLC*, No. 05-09-00305-CV, 2009 WL 2581867 (Tex. App.—Dallas Aug. 24, 2009, no pet.) (per curiam) (mem. op.). In that case we were confronted with judgment that contained a handwritten

notation that "[t]he issue of whether an award of attorney's fees is equitable and just remains pending." *Id*. at \*1. We held that the continued pendency of the claim for attorneys' fees made the judgment interlocutory and not appealable. *Id*. In the instant case, the judge's statement of intent to take up Alan's request for attorneys' fees and sanctions at a future hearing would seem to render the March 6 order interlocutory.

AHC argues that a pending motion for sanctions, like Alan's motion for costs, fees, and sanctions under section 27.009, does not affect the finality of an order that would otherwise be final. *See Mantri v. Bergman*, 153 S.W.3d 715, 717 (Tex. App.—Dallas 2005, pet. denied) ("Unlike a pending cause of action, a pending motion for sanctions does not make interlocutory an otherwise-final judgment."); *see also Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000) ("[W]e agree that a judgment does not have to resolve pending sanctions issues to be final . . . ."). But more recent authority from the Texas Supreme Court contradicts AHC's position. In *Crites v. Collins*, the court stated, "A judgment dismissing all of a plaintiff's claims against a defendant, such as an order of nonsuit, does not necessarily dispose of any cross-actions, *such as a motion for sanctions*, unless specifically stated within the order." 284 S.W.3d 839, 840 (Tex. 2009) (per curiam) (emphasis added). The *Crites* court held that an order of nonsuit was not a final judgment because (1) the defendant had previously filed a Chapter 74 motion for dismissal with prejudice and for sanctions and (2) the nonsuit order "did not resolve the pending motion because it did not contain specific language denying or granting relief." *Id*. at 841. In a similar case, *Unifund CCR Partners v. Villa*, the supreme court again held that a dismissal order was not final because it did not dispose of a previously filed motion for sanctions. 299 S.W.3d 92, 96–97 (Tex. 2009) (per curiam). The *Unifund* court distinguished *Mantri* and *Lane Bank Equipment* on the ground that those cases involved motions for sanctions that were filed after the cases had already been dismissed. *Id*. at 96. Other courts have followed

*Crites* and *Unifund*. *See, e.g.*, *Walter v. Teller*, No. 02-12-00028-CV, 2013 WL 5966351, at *2 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op.) (pending motion for sanctions under Chapter 10 of civil practice and remedies code prevented order of nonsuit from being final judgment); *In re Anderson*, No. 01-10-00182-CV, 2010 WL 1612309 (Tex. App.—Houston [1st Dist.] Apr. 19, 2010, orig. proceeding) (mem. op.) (same).

AHC also relies on our *Straza* decision, in which we reaffirmed the rule that an otherwise final judgment is final even if it does not address court costs. *See* 124 S.W.3d at 406 (citing *Thompson v. Beyer*, 91 S.W.3d 902, 904 (Tex. App.—Dallas 2002, no pet.)). *Straza* is distinguishable because it concerned only an omission of an award of court costs from an otherwise final judgment. The March 6 order in this case, by contrast, not only failed to award costs but also set a further hearing on a pending request for "damages and costs," meaning in this context costs, attorneys' fees, and sanctions. The pendency of Alan's request for attorneys' fees and sanctions and the March 6 order's reservation of those matters for future litigation make this case more analogous to cases such as *Crites*, *Unifund*, and *Interhealth*.

We conclude that the March 6 order in this case was not a final judgment. Alan's motion for sanctions was already pending when the trial judge signed the March 6 order of dismissal, and the order did not fully resolve the motion for sanctions. This prevented the order from being a final judgment. *See Unifund*, 299 S.W.3d at 96–97; *Crites*, 284 S.W.3d at 840–41. Moreover, the March 6 order's express reservation of the issue of "damages and costs" under section 27.009 for determination at a later hearing means that the trial judge's intent to render a final judgment was not "unequivocally expressed in the words of the order itself," as required by *Lehmann*, 39 S.W.3d at 200. And to the extent the conduct of the parties is relevant to finality in this case, *see Vaughn*, 324 S.W.3d at 563, the parties continued to litigate the case after March 6 as though the March 6 order were not a final judgment.

Because the March 6 order was not a final judgment, the April 14 final judgment is not void, and we have jurisdiction over this appeal. We reject AHC's second issue on appeal.

**B.      Jurisdiction over Dinah's cross-appeal**

Next we consider AHC's motion to dismiss Dinah's cross-appeal. AHC contends that Dinah's notice of cross-appeal, filed on June 25, 2012, was filed late because the deadline for her to file an interlocutory appeal from the denial of her motion was either March 18 or March 30, 2012. Dinah responds, in part, that her notice of cross-appeal was timely because she filed it within fourteen days after AHC filed its notice of appeal. We deny AHC's motion.

AHC's argument is based on section 27.008(c), since repealed in 2013 but applicable to this case. Prior to the repeal, section 27.008 provided as follows:

> (a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.
>
> (b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.
>
> (c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.008 (West Supp. 2013)). Section 27.005(a) provides, "The court must rule on a motion [to dismiss] under Section 27.003 not later than the 30th day following the date of the hearing on the motion." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a) (West Supp. 2013).

AHC argues that Dinah's sixty-day deadline to appeal began to run either January 18, when Dinah's motion was supposedly denied by operation of law under section 27.005, or January 30, when the trial judge signed the nonsuit order. Implicit in AHC's argument is an

assumption that Dinah's failure to take the interlocutory appeal authorized by section 27.008 precluded her from appealing the denial of her motion to dismiss after final judgment. Dinah contends that her notice of appeal was timely under the general rule for notices of cross-appeal, Texas Rule of Appellate Procedure 26.1(d), because she filed it within fourteen days after AHC filed its notice of appeal. In this argument, Dinah assumes that she could appeal the denial of her motion to dismiss under the general rules governing appeals after final judgments, even if she did not file an interlocutory appeal earlier in the process.

We conclude that, on the facts of this case, Dinah was not obliged to file an interlocutory appeal and was entitled to appeal the denial of her motion to dismiss after final judgment. *See Hernandez v. Ebrom*, 289 S.W.3d 316 (Tex. 2009). *Hernandez* was a health-care-liability suit against Dr. Hernandez. *Id.* at 317. Dr. Hernandez filed a motion to dismiss and for an award of fees and costs based on the expert-report provisions of Chapter 74 of the civil practice and remedies code. *Id.* The trial court denied the motion, and Dr. Hernandez did not pursue an interlocutory appeal of that ruling even though one was available. *Id.* at 317–18. The plaintiff eventually nonsuited the case, and after final judgment Dr. Hernandez appealed the denial of his motion to dismiss. *Id.* at 317. The court of appeals dismissed his appeal for want of jurisdiction, but the supreme court reversed, holding that Dr. Hernandez's failure to take the available interlocutory appeal did not preclude him from appealing after final judgment. *Id.* at 317–18. The supreme court focused largely on the permissive language of the interlocutory-appeal statute, which provides that a person "may" appeal from an interlocutory order that denies in whole or in part a Chapter 74 motion to dismiss. *Id.* at 318–19. The court also concluded that permitting the appeal after final judgment would advance the legislature's purposes in adopting the motion-to-dismiss procedure by facilitating a defendant's right to seek redress for defending a meritless claim and by perhaps reducing the number of interlocutory appeals. *Id.* at 319–20.

Finally, the court cautioned that Dr. Hernandez would not have been permitted to appeal the denial of his motion to dismiss if the case had been tried on the merits and resulted in a final judgment in favor of the plaintiff. *Id*. at 321.

The language of the statute creating the right of interlocutory appeal in this case is permissive, just like the language at issue in *Hernandez*. Section 27.008(a) provides that the moving party "may appeal" after the denial of its motion to dismiss by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a). In this case, whether the trial judge signed an order disposing of Dinah's motion or her motion to dismiss was denied by operation of law thirty days after the hearing is not determinative. *See id*. § 27.005(a). As in *Hernandez*, the permissive language of Chapter 27's interlocutory-appeal statute indicates a legislative intent not to make the interlocutory appeal mandatory. *See* 289 S.W.3d at 318–19. Moreover, the policy reasons relied on by the *Hernandez* court to support treating the interlocutory-appeal right as permissive also apply in the Chapter 27 context. Permitting Dinah to pursue her Chapter 27 rights in this appeal after final judgment would allow her to vindicate rights afforded to her by the Legislature and might increase judicial efficiency by reducing the number of interlocutory appeals. *See id*. at 319–20. And the exception noted in *Hernandez* for cases that are tried and result in a final judgment in favor of the plaintiff does not apply in this case.

Dinah was not required to pursue an interlocutory appeal of the denial of her motion to dismiss. Given the outcome of the case, she was entitled to appeal that denial after final judgment under the rules generally applicable to such appeals. Under those rules, she timely filed her notice of appeal. *See* TEX. R. APP. P. 26.1(d).

We deny AHC's motion to dismiss Dinah's cross-appeal for lack of jurisdiction.

### III. AHC's Appeal

We turn to AHC's four remaining issues on appeal. In its first issue, AHC complains that the trial judge erred by hearing Alan's motion to dismiss after the statutory deadline for the hearing had expired. In its third issue, AHC contends that it met its burden of proof under Chapter 27 and so the trial judge erred by granting Alan's motion to dismiss. In its fourth and fifth issues, AHC complains about the awards of attorneys' fees and sanctions.

**A.      Timeliness of the hearing**

In its first issue on appeal, AHC argues that the trial judge erred by hearing Alan's motion to dismiss on March 5, 2012, which was sixty days after Alan filed and served the motion. AHC relies on the version of section 27.004 applicable to this case, which provided as follows: "A hearing on a motion [to dismiss] under Section 27.003 must be set not later than the 30th day after the date of service of the motion unless the docket conditions of the court require a later hearing." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2013). AHC does not explain what consequence should follow if we were to conclude that the hearing was untimely under section 27.004.

We cannot address AHC's first issue on appeal because the record does not demonstrate preservation in the trial court. AHC does not explain in its appellate briefs how it preserved this alleged error. AHC filed its response to Alan's motion to dismiss on March 5—the date of the hearing—but the response contains no objection to the timeliness of the hearing. We do not have a reporter's record from the March 5 hearing. The two volumes of reporter's record from subsequent hearings that we do have contain no objections from AHC regarding the timeliness of the March 5 hearing. Nor did AHC raise this argument in its motion for new trial. Accordingly, AHC may not raise this argument on appeal. *See* TEX. R. APP. P. 33.1(a) (general rule regarding

error preservation); *Cadle Co. v. Jenkins*, 266 S.W.3d 4, 7 n.4 (Tex. App.—Dallas 2008, no pet.) (rejecting argument not preserved in trial court).

**B.     Propriety of the dismissal of AHC's claims**

In its third issue on appeal, AHC argues that the trial judge erred by granting Alan's motion to dismiss because AHC successfully established a prima facie case for each essential element of the claims it asserted against Alan, namely libel and tortious interference with prospective business relationships.

In the context of a Chapter 27 motion to dismiss, the movant bears the initial burden of showing by a preponderance of the evidence that the claimant's legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also Pickens v. Cordia*, No. 05-13-00780-CV, 2014 WL 2134540, at *2 (Tex. App.—Dallas May 22, 2014, no pet. h.). AHC does not contest that Alan satisfied his burden under section 27.005(b). Thus, the burden shifted to AHC to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied). Generally, a "prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotations and citation omitted); *see also Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (applying this definition of "prima facie case" in Chapter 27 context). We review de novo the trial judge's determination that AHC failed to carry its burden under section 27.005(c). *See*

*Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 727 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

### 1. Libel

Two essential elements of libel are that the defendant made a defamatory statement about the plaintiff and that he did so in written or other graphic form.[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011).  A statement is defamatory if it tends to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue.  *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 456 (Tex. App.—Dallas 2002, no pet.).  A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances.  *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.).  Whether a statement is capable of a defamatory meaning is initially a question of law for the court.  *Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 264 (Tex. App.—Dallas 2009, pet. denied).  Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion.  *See Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.); *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App.—Dallas 2006, pet. denied); *see also Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) ("[S]tatements that are not verifiable as false cannot form the basis of a defamation claim.").  We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made.  *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002).  Whether a statement is a statement of fact or opinion

---

[1] Libel has other elements, but they vary depending on the status of the speaker, the status of the person spoken about, and the contents of the statement.  *See Neely v. Wilson*, 418 S.W.3d 52, 60–61 (Tex. 2013) (stating elements of defamation when defendant is a "media defendant"); *Hancock v. Variyam*, 400 S.W.3d 59, 64–66 & n.7 (Tex. 2013) (discussing elements of culpability and damages); *Rehak Creative Servs., Inc.*, 404 S.W.3d at 727 n.5 (discussing the burden of proof on truth or falsity).  Discussion of those elements is not necessary to our disposition of this appeal.

is also a question of law. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.)

AHC relies on evidence of three statements by Alan on various internet websites to support the elements of AHC's libel claim, and we conclude that none of them constitutes an actionable defamatory statement of fact.

First, AHC points to the following statement: "The guy that was supposed to handle closing could barely speak english [sic]." We conclude that this statement did not rise to the level of being defamatory. To be defamatory, a statement must tend to injure the subject's reputation, expose him to public hatred, contempt, ridicule, or financial injury, or impeach his honesty, integrity, or virtue. *Blanche*, 74 S.W.3d at 456. This statement, although plainly intended as criticism, is not egregious enough to impeach AHC's honesty, tarnish its reputation, or expose it to ridicule or financial injury. It is akin to the statement in *Double Diamond* that a real-estate development lacked adequate roads and adequate water and sewer systems. 109 S.W.3d at 855. Although the statement constituted "opinionated criticism," we held as a matter of law that the statement was not egregious enough to be defamatory. *Id.* Moreover, we conclude that the statement complained of by AHC is a nonactionable statement of opinion because it cannot be objectively verified. Whether someone can "barely speak English" is a matter of subjective opinion, because what one person may view as non-proficient English may be completely acceptable to another person. *See Palestine Herald–Press Co. v. Zimmer*, 257 S.W.3d 504, 511–12 (Tex. App.—Tyler 2008, pet. denied) (holding that statement that person made "obscene" gesture is a statement of subjective opinion, not objectively verifiable fact); *see also Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App.—Dallas 2012, pet. denied) (observing that a statement is opinion if it is "by its nature, an indefinite or ambiguous individual judgment that

rests solely in the eye of the beholder") (internal quotations omitted). AHC's evidence of this statement is no evidence of a defamatory statement of fact.

Next, AHC relies on these statements: "Chris and end [sic] everyone I talked to at this company were incompetent. They reviewd [sic] my credit rating and promised a quick close. Then the list of things got longer and longer." We first consider the assertion that "Chris" and AHC's other employees were incompetent. We have held that statements implying that someone is incompetent are nonactionable opinions because they are not objectively verifiable. *Robertson*, 190 S.W.3d at 903; *see also Lacy v. Dallas Cowboys Football Club*, No. 3:11-CV-0300-B, 2012 WL 2795979, at *13 (N.D. Tex. July 10, 2012) ("[S]tatements about an employee's competency are expressions of opinion, not actionable assertions of fact . . . ."). Consistent with our opinion in *Robertson*, we hold that a statement expressly calling someone incompetent is a nonactionable statement of opinion. The other statements amount to implicit criticism of AHC for requiring additional "things" after promising a quick close. These statements are not egregious enough to be defamatory. *See Double Diamond*, 109 S.W.3d at 855 (holding that criticism of real-estate development's facilities was not defamatory). In sum, we conclude that these statements are no evidence of a defamatory statement of fact.

Finally, AHC relies on the following statement: "At one point they asked for an explanation of $200 out of a $30,000 deposit to make sure we were not 'borrowing money' for closing. It was my sons [sic] birthday money for god's sakes!!!!" We conclude as a matter of law that this statement is not defamatory. At most, the statement communicates the author's opinion that AHC was excessively demanding in requiring information to support a loan request. The statement cannot fairly be read to injure AHC's reputation, expose AHC to public hatred, contempt, ridicule, or financial injury, or impeach AHC's honesty, integrity, or virtue. *See id.* (holding that criticism of real-estate development's facilities was not defamatory). Moreover,

whether a lending business is excessively demanding is not objectively verifiable, but rather a matter of subjective opinion. *See Robertson*, 190 S.W.3d at 903 (implying that employee is incompetent is an expression of opinion). AHC's evidence of this statement is no evidence of a defamatory statement of fact.

Because AHC produced no evidence of any defamatory statements of fact by Alan, the trial judge correctly dismissed AHC's libel claim.

### 2. Tortious interference with prospective business relationships

The elements of tortious interference with a prospective contract are: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference. *Anderton v. Cawley*, 378 S.W.3d 38, 59 (Tex. App.—Dallas 2012, no pet.). Thus, to survive Alan's motion to dismiss, AHC had to establish by clear and specific evidence a prima facie case for each of those essential elements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

The element of damages is dispositive. In its brief, AHC fails to identify any evidence of damages. Indeed, AHC's entire argument on the element of damages is a single sentence asserting that Alan's conduct "has already caused (and will continue to cause) AHC significant damages." AHC provides no record citation in support. We will not comb the record for evidence of damages without guidance from AHC. *See Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 817 (Tex. App.—Dallas 2003, pet. denied) ("An appellate court has no duty to search a voluminous record without sufficient guidance from an appellant to determine whether

an assertion of reversible error is valid."); *Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc) ("This court is not required to search the record for evidence supporting a litigant's position under particular points of error . . . ."); *see also* TEX. R. APP. P. 38.1(i) (argument section of brief must contain "appropriate citations to authorities and to the record").

AHC has not shown that it produced any evidence of the essential element of damages. Accordingly, we will not disturb the trial judge's dismissal of AHC's tortious-interference claim.

### 3. Conclusion

AHC's third issue on appeal is without merit.

## C. Attorneys' fees

In its fourth issue on appeal, AHC contends that the record does not support Alan's recovery of $15,616 as attorneys' fees. AHC argues that the award improperly includes attorneys' fees incurred before AHC joined Alan as a defendant in December 2011. AHC also argues that there is no evidence Alan actually paid or incurred any amount as attorneys' fees. We generally review a trial court's award of attorneys' fees for abuse of discretion. *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.).

### 1. Sufficiency of the evidence that Alan paid or incurred any fees

We address AHC's no-evidence argument first. A trial judge who dismisses an action under Chapter 27 "shall award to the moving party . . . reasonable attorney's fees . . . incurred in defending against the legal action as justice and equity may require." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). We find no cases interpreting this particular statute, but in a similar context we have construed the word "incur" to mean "become liable to pay." *See Keever v. Finlan*, 988 S.W.2d 300, 308 (Tex. App.—Dallas 1999, pet. dism'd) (interpreting government-code provision authorizing award of "reasonable attorney's fees incurred by" a substantially

prevailing party). AHC argues that there is no evidence that Alan incurred any attorneys' fees in the course of defending this lawsuit. According to AHC, Alan's evidence does not show that Alan ever agreed to pay attorneys' fees, became liable to his attorneys' law firm for fees, or paid any money to that law firm. Alan responds that the evidence sufficiently shows that Alan both incurred and paid the fees awarded by the trial judge.

The evidence concerning Alan's attorneys' fees consisted principally of an affidavit by Alan and Dinah's attorney David O'Dens, a contesting affidavit by AHC's attorney Jeffrey Hellberg, and a collection of five invoices from O'Dens's law firm to Alan and Dinah. We first agree with Alan that the evidence adequately shows that he agreed to pay O'Dens and his law firm for legal services in this case. Although O'Dens's affidavit does not contain a direct statement to that effect, the following testimony gives rise to a reasonable inference that such an agreement was made:

> My services and the services of SETTLEPOU [law firm] were and are necessary and the expenses incurred are reasonable in that Plaintiff . . . filed suit against Defendants and it was reasonable and necessary for Defendants to retain legal counsel to represent and defend them in this action, as well as to assert their statutory rights under the Texas Anti-SLAPP statute . . . .

To this evidence we may add O'Dens's subsequent description of the legal work he and others actually performed on the case and the existence of the invoices directed to Alan and Dinah. The evidence, viewed as a whole, gives rise to a reasonable inference that Alan and Dinah did in fact "retain," i.e., make an agreement to pay, O'Dens and his law firm for their legal services.

We also agree with Alan that the evidence adequately supports the proposition that Alan also incurred liability for and paid for[2] the legal services of O'Dens and his law firm. In his affidavit, O'Dens explains what services were performed by members of his law firm, how much

---

[2] Section 27.009(a)(1) does not require payment as a precondition for an award of fees, but we discuss the evidence of payment because actual payment of fees tends to show that those fees were previously "incurred."

time was spent on those services, and what the relevant hourly rates were. Coupled with his previous testimony indicating that Alan and Dinah retained O'Dens and his law firm to furnish those services, O'Dens's testimony is some evidence that Alan actually incurred—became liable to pay—fees for those services. As for actual payment, O'Dens testified, "As of the date of this Affidavit, Mr. [Alan] Gonzalez is current in the payment of attorneys' fees invoiced to date." This is some evidence that Alan actually paid fees to O'Dens and his law firm, which in turn tends to show that Alan "incurred," or became liable for, those fees.

In opposition, AHC relies on five invoices from O'Dens's law firm to the Gonzalezes, one for each month from November 2011 through March 2012. Each of the first four invoices contains an itemization of fees and expenses, recites a "Credit Adjustment" in the exact amount of the combined fees and expenses, and concludes, "Total for THIS Invoice $0.00." The last invoice is dated March 9, 2012. It contains an itemization of $468 in fees and $29.37 in expenses, and it concludes, "Total for THIS Invoice $497.37." AHC argues that the invoices do not reflect that Alan ever actually paid or owed O'Dens's law firm anything except the final invoiced amount of $497.37. We disagree. It appears that all five invoices were generated after March 9, 2012, because each invoice concludes with a reference to one "Open Invoice[] for this Matter" dated March 9, 2012, and each invoice also recites a balance due of $497.37. Each invoice except the last one reflects that the fees and expenses for that invoice were exactly offset by a "Credit Adjustment" in the appropriate amount. AHC's inference that the law firm simply wrote off those fees and expenses is not reasonable, particularly in light of the then-current March 2012 invoice seeking payment of almost $500 in fees and expenses from the Gonzalezes. By contrast, it is reasonable to infer that Alan had paid the first four invoices, so that when O'Dens's law firm later generated copies of the invoices for AHC's inspection in March 2012 those invoices reflected those payments as "Credit Adjustment[s]" and the balances owed on

those specific invoices as zero. We conclude the record adequately supports the proposition that Alan did incur attorneys' fees and expenses over and above the last invoiced amount of $497.37. The trial judge did not abuse his discretion by concluding that Alan incurred fees and expenses in excess of $497.37.

## 2. Fees incurred prior to joinder of Alan

In AHC's other argument under issue four, it argues that Alan cannot recover attorneys' fees incurred before AHC joined him as a defendant in the lawsuit in December 2011. AHC argues as a matter of statutory interpretation that fees and expenses incurred before it joined Alan as a defendant simply cannot be "reasonable attorney's fees . . . incurred in defending against the legal action" under section 27.009(a)(1). Alan responds that the O'Dens affidavit shows that most of the legal services provided to Dinah before Alan was joined were also "preparatory to and necessary for the legal services performed for Mr. [Alan] Gonzalez." O'Dens also testified that, if he segregated out the fees attributable solely to Dinah's representation, the reasonable and necessary fees incurred in Alan's defense were $15,616. That is the amount the trial judge awarded Alan.

We first review the relevant evidence. On October 18, 2011, the president and majority owner of AHC, Naushad Prasla, sent Dinah an email demanding that she remove the allegedly defamatory internet postings and threatening legal action against her. For example, the email includes this statement: "My second free advise [sic] is for you to get a good Lawyer in Dallas area as the venue for the Lawsuit has already been set in Dallas County, Texas. See attached Rate Lock Confirmation and Agreement by you and read it carefully." On that same date, Alan conferred with his and Dinah's attorney for the first time, and Alan began to incur attorneys' fees for services relating to AHC's email. On October 27, 2011, AHC sued Dinah under the mistaken belief that she had posted the messages in question. And on December 13, 2011, AHC filed its

amended petition joining Alan as a defendant. Alan and Dinah incurred attorneys' fees relating to AHC's claims throughout October, November, and December of 2011. As noted above, Alan's attorney offered evidence segregating attorneys' fees attributable solely to the representation of Dinah. He did not segregate fees incurred in the representation of Alan either before October 27 or before December 13.

Next we analyze the language of the statute. Chapter 27 allows a successful movant like Alan to recover his reasonable attorneys' fees "incurred in defending against the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). We must construe this provision, like all of Chapter 27, "liberally to effectuate its purpose and intent fully." *Id*. § 27.011(b). The questions presented are (1) whether fees awarded under section 27.009(a)(1) must be limited to fees incurred after the successful movant was formally joined in the lawsuit and, if not, (2) whether Alan's fees incurred before December 13, 2011, are recoverable on the particular facts of this case.

Chapter 27 defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id*. § 27.001(6). So the term "legal action" is not limited to formal judicial pleadings and proceedings—it also includes "cause[s] of action." Accordingly, Alan can recover his pre-joinder attorneys' fees if he incurred them to defend against AHC's "cause of action." The statute does not define "cause of action," but the generally accepted meaning of that term is "the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (internal quotations and citations omitted). A "cause of action" generally arises before the formal filing of suit on that cause of action. Can a person "defend" against a cause of action that has arisen but not yet resulted in the filing of a lawsuit? We conclude that the answer is yes. To defend means

to "deny, contest, or oppose (an allegation or claim)." BLACK'S LAW DICTIONARY 508 (10th ed. 2014). In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance. It would be a singularly inexperienced view to assume that legal work actually commences when a formal defense is filed in a lawsuit rather than well before the filing occurs. Once a cause of action has arisen and resulted in a claim or demand, even one made pre-suit, securing legal services to oppose or contest the cause of action is a natural choice and a reasonable course of action. Delay and procrastination may lead to unpleasant consequences. If the legislature had intended to limit the recovery of attorneys' fees to fees incurred after the filing of suit against the movant, it presumably would have limited its definition of "legal action" to formal legal proceedings or otherwise excluded "causes of action" from the scope of section 27.009(a)(1). For these reasons, we conclude that section 27.009(a)(1) permits a successful movant to recover attorneys' fees incurred in the defense of a cause of action even if the fees were incurred before the movant was actually sued.

Having clarified the meaning of section 27.009(a)(1), we have little difficulty concluding that the trial judge did not abuse his discretion by awarding Alan his attorneys' fees incurred before Alan was formally joined in this lawsuit. The evidence showed that Alan began incurring attorneys' fees on October 18, 2011, the same date AHC sent the threatening email to Dinah about the allegedly defamatory posts that Alan had made. His attorneys' fee statements showed that the pre-suit fees were incurred in response to AHC's email for services such as settlement negotiations and legal research to ascertain the validity of AHC's potential defamation claims. The trial judge could reasonably conclude that Alan's pre-joinder attorneys' fees were in fact incurred in defending against AHC's cause of action.

On the facts of this case, we conclude that the trial judge did not abuse his discretion by awarding attorneys' fees to Alan for legal services rendered before Alan was actually sued.

### 3.      Conclusion

AHC's fourth issue on appeal is without merit.

## D.      Sanctions

In its fifth issue on appeal, AHC contends that there is no evidence to support the amount of sanctions awarded to Alan by the trial judge, which was $15,000.  We generally review an award of sanctions for abuse of discretion.  *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *11 (Tex. App.—Austin Apr. 11, 2014, pet. filed) (mem. op.) (employing abuse-of-discretion standard in review of sanction under Chapter 27).  "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles."  *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

Section 27.009 prescribes that a court that dismisses a legal action under Chapter 27 shall award the movant "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2).  The trial judge in this case made a general finding that "[a] sanction in the amount of $15,000.00 will be sufficient to prevent AHC from bringing similar actions to this action."  AHC contends that there is no evidence to support this finding.

Alan argues that the sanction amount was supported by the evidence.  First, he points out that Alan's attorneys' fees were $15,616, and he contends that the trial judge acted reasonably by concluding that a sanction of a similar amount would deter AHC from bringing a similar action in the future.  Alan also points out Prasla's affidavit and deposition testimony showing that AHC

made a net profit of about $111,000 in 2009 and about $105,000 in 2010. As of the date of Prasla's April 12, 2012 deposition, he did not know what AHC's net profit was in 2011, but he guessed that it would be between $130,000 and $200,000. He also testified that his salary in 2011 was $90,000 and that he paid his wife and daughter a total of about $17,000 in 2011. Alan also directs our attention to an email that Prasla sent to Dinah when he was under the belief that she had posted the internet messages about AHC. That email contains passages such as, "You started this. You can end it. Otherwise, I will end it for you, and it won't be pretty." Given this evidence, we conclude that a reasonable trial judge could have determined that a $15,000 sanction was appropriate and necessary to deter future lawsuits by AHC in the future, given AHC's track record of profitability and Prasla's aggressive email to Dinah.

AHC argues that the sanction was not necessary to deter AHC from filing future lawsuits because there was evidence showing that it was not in AHC's best interest to threaten its clients or file lawsuits, and that AHC could not survive if it treated customers unfairly or engaged in time-consuming lawsuits. AHC also points to evidence that it had never sued anyone else before, and that it was a "difficult decision for AHC to file this suit." It was the trial judge's prerogative to weigh this evidence along with all the other evidence in determining, as a matter of discretion, how large the sanction needed to be to accomplish its statutory purpose. Moreover, we note that Alan argued for a sanction in the range of $45,000 to $60,000, so the trial judge awarded a sanction that was substantially smaller than the one sought by Alan.

We conclude that the sanction amount of $15,000 was neither arbitrary nor unreasonable, and that the trial judge did not abuse his discretion by imposing the sanction. We reject AHC's fifth issue on appeal.

## IV. DINAH'S CROSS-APPEAL

In her single issue on cross-appeal, Dinah asserts that the trial judge erred by not conducting a hearing on her affirmative claims for relief under Chapter 27.

These are the pertinent facts. On November 16, 2011, Dinah filed her motion to dismiss and for attorneys' fees and sanctions. According to the trial judge's findings of fact, the judge heard Dinah's motion on December 19, 2011, and at the end of the proceeding he continued the hearing to January 30, 2012, so that mediation and limited discovery could take place.[3] On January 27, 2012, AHC filed a nonsuit of its claims against Dinah. At the January 30 hearing, AHC argued that Dinah's motion was moot, and Dinah conversely pressed the judge to hear and rule on her motion. At the conclusion of the hearing, the judge signed an order of nonsuit and "refused to entertain any relief sought by Mrs. Gonzalez in this action."[4] Nothing in the record indicates that the judge ever revisited Dinah's motion. The final judgment awards Dinah no relief and recites that it "finally disposes of all parties and all claims and is appealable."

We reject Dinah's issue on cross-appeal. Her sole complaint is that the trial judge did not conduct a hearing on her "affirmative claims" under Chapter 27. But the record refutes her claim. The trial judge held a hearing on her Chapter 27 motion on December 19. The judge continued the hearing until January 30, on which date the hearing on Dinah's motion reconvened. At the conclusion of that proceeding, the judge signed the order of nonsuit and refused to entertain any relief sought by Dinah in the action. In short, the record establishes that Dinah's cross-appeal issue is without merit—the trial judge did in fact hear her motion, on two different dates. Dinah does not complain about the judge's refusal to make an express ruling on

---

[3] We do not have a reporter's record of the December 19 hearing. A copy of what purports to be a transcript of the December 19 hearing is attached to Alan and Dinah's brief, but we cannot consider it. "An appellate court cannot consider a document cited in a brief and attached as an appendix if it is not formally included in the record on appeal." *In re Guardianship of Winn*, 372 S.W.3d 291, 297 (Tex. App.—Dallas 2012, no pet.).

[4] Again, we do not have a reporter's record of this hearing. All facts about the hearing are taken from the trial judge's findings of fact and conclusions of law.

her motion, the denial of her motion by operation of law, or the conclusive denial of her motion when the judge signed a final judgment granting her no relief.

Because the record shows that Dinah received a hearing on her motion to dismiss, we reject her sole issue on cross-appeal.[5]

## V.  DISPOSITION

We affirm the judgment of the trial court.

120892F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

---

[5] We recently held that a defendant could not rely on Chapter 27 as to a particular claim because his defense was that he did not publish the speech allegedly giving rise to the claim. *See Pickens v. Cordia*, No. 05-13-00780-CV, 2014 WL 2134540, at *7 (Tex. App.—Dallas May 22, 2014, no pet. h.). Because Dinah claims that she did not publish any of the defamatory posts, *Pickens* indicates that she cannot rely on Chapter 27 in any event.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AMERICAN HERITAGE CAPITAL, LP,
Appellant/Cross-Appellee

No. 05-12-00892-CV    V.

ALAN GONZALEZ, Appellee, and DINAH
GONZALEZ, Cross-Appellant

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-13741.
Opinion delivered by Justice FitzGerald.
Justices Francis and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Alan Gonzalez recover his costs of this appeal from
appellant American Heritage Capital, LP.  It is further **ORDERED** that appellant American
Heritage Capital, LP and cross-appellant Dinah Gonzalez bear their own costs of this appeal.

Judgment entered July 1, 2014