**REVERSE in Part, REMAND and AFFIRM; and Opinion Filed August 3, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01380-CV

**APPLE TREE CAFÉ TOURING, INC. AND ERICA WRIGHT, Appellants**
**V.**
**PAUL LEVATINO, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-12742**

## MEMORANDUM OPINION
Before Justices Francis, Brown and Schenck
Opinion by Justice Schenck

This is an interlocutory appeal of the trial court's denial of appellants Apple Tree Café Touring, Inc. and Erica Wright's motion to dismiss appellee Paul Levatino's defamation claim under the Texas Citizens Participation Act (TCPA), an Anti-SLAPP statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–27.011 (West 2015). We reverse, in part, that portion of the trial court's order awarding Levatino attorney's fees and costs and remand the issue of attorney's fees and costs to the trial court for a determination as to whether the motion to dismiss was frivolous or solely intended to delay. We otherwise affirm the trial court's order. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### FACTUAL AND PROCEDURAL BACKGROUND

Erica Wright is a recording artist, producer, and actress professionally known as Erykah Badu. Apple Tree Café Touring, Inc. is one of Badu's companies. Levatino worked for Badu

through her various companies, including Apple Tree, for about eight years. He was the general manager of Badu's business entities and played a significant role within her organization. His job duties involved marketing, concert and event management, merchandising, and other business operations. He received compensation for his services through Apple Tree.

Badu fired Levatino on or about May 27, 2014. On May 29, 2014, she used social media to declare that she never had a manager and that Levatino never was her manager.[1] She also posted a statement that Levatino had "shut down my main fan info face book [sic] page."

On October 20, 2014, Levatino's lawyer sent Badu's lawyer a letter accusing Badu of defamation and demanding a public retraction and correction and unspecified compensation. On October 31, 2014, appellants filed their original petition against Levatino seeking a declaratory judgment that "Levatino was not a talent manager for [appellants] and is therefore owed no compensation related to management services." Thereafter, they amended their petition to add claims of fraud, conversion, and civil theft by deception.

Levatino answered and later filed a counterclaim asserting Badu's Facebook and Twitter posts were defamatory and have caused Levatino to suffer actual damages in the form of lost compensation and earning capacity, and non-pecuniary damages. Levatino asserts Apple Tree is liable for the statements and omissions made by Badu.

Levatino timely moved to dismiss appellants' claims under the TCPA, arguing that his demand letters that sparked appellants' suit were protected activity under the statute. The trial court denied his motion and this Court affirmed the trial court's order on interlocutory appeal. *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724 (Tex. App.—Dallas 2016, pet. denied). Levatino sought review in the Texas Supreme Court. The supreme court denied

---

[1] On May 29, 2014, Badu posted on Facebook and Twitter: "I have never had a manager in the 17 years of my professional career." She later posed on Twitter: "Paul Levatino Was Never My Manager. Although . . . he WAS an ambitious employee. Be well Pauly the knife." She also posted on Twitter: "My x employee, Paul Levatino just shut down my main fan info face book page. Will be up and running again soon."

Levatino's petition for review.

Appellants then filed a motion to dismiss Levatino's defamation claims under the TCPA. Appellants sought to dismiss Levatino's defamation claim as to Badu's Facebook and Twitter posts that she had never had a manager in her professional career, and her Twitter post "Paul Levatino Was Never My Manager. Although . . . he WAS an ambitious employee. Be well Pauly the knife."[2] Appellants did not seek to dismiss Levatino's defamation claim as to Badu's Twitter post "My x employee, Paul Levatino just shut down my main fan info face book [sic] page. Will be up and running again soon. Thanks." The trial court denied the motion and awarded Levatino attorney's fees and costs. This interlocutory appeal followed.

### SUMMARY OF THE ISSUES

Appellants raise seven issues.

In their first issue, appellants assert the trial court should have concluded that when Badu posted on Twitter and on her Facebook fan page that:

I've Never Had A Manager In The 17 Years Of My Professional Career, and

Paul Levatino Was Never My Manager. Although . . . He WAS an ambitious employee. Be Well Pauly The Knife

she was exercising her rights of association and of free speech.

In their second issue, appellants assert the foregoing statements are not reasonably understood by the average reader as statements calculated to defame Levatino.

In their third and fourth issues, appellants assert the trial court should have dismissed Levatino's defamation claim as to her "manager" statements because they are subjective and not objectively verifiable as true or false, and are substantially true.

---

[2] Pauly the Knife is Levatino's Twitter name.

In their fifth issue, appellants argue the trial court should have dismissed Levatino's defamation claim because Badu's statements were not defamatory *per se*, and Levatino failed to meet his burden under section 27.005(c) of the civil practice and remedies code of citing clear and specific evidence of special damages.

In their sixth issue, appellants assert the trial court should have dismissed Levatino's defamation claim against Apple Tree because Badu's statements were made in her individual capacity and not on behalf of Apple Tree.

In their final issue, appellants assert the trial court erred in awarding Levatino the attorney's fees and costs he incurred in responding to appellants' motion because it did not make a written finding that the motion was frivolous or solely intended to delay.

For the reasons discussed below, we conclude Badu's comments were exercises of her right of association, Levatino presented a prima facie case of defamation, appellants did not establish by a preponderance of the evidence that Badu's statements were subjective and substantially true, Badu's comments are attributable to Apple Tree, and the record does not include a finding that appellants' motion to dismiss was frivolous or solely intended for delay.

### APPLICABLE LAW AND STANDARD OF REVIEW

Chapter 27 of the Texas Civil Practice and Remedies Code is an "anti-SLAPP statute," meaning that the legislature enacted it to curb "strategic lawsuits against public participation." *Am. Heritage Capital, LP v. Gonzalez,* 436 S.W.3d 865, 868 (Tex. App.—Dallas 2014, no pet.). Its main feature is a motion-to-dismiss procedure that allows defendants at an early stage to seek dismissal, attorney's fees, and sanctions for the filing of a meritless suit in response to a defendant's proper exercise of a protected right. *Adams v. Starside Custom Builders, LLC*, No. 05-15-01162-CV, 2016 WL 3548013, at *4 (Tex. App.—Dallas June 28, 2016, pet. filed) (mem. op).

A chapter 27 movant bears the initial burden of showing by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association." *See* CIV. PRAC. & REM. § 27.005(b). If the movant carries his or her initial burden, the nonmovant must then establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). When determining whether the non-movant presented a prima facie case, we consider only the pleadings and evidence in favor of the nonmovant's case. *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at \*5 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.). We do not consider whether the movant presented evidence rebutting the nonmovant's case; such evidence is appropriate in determining a defendant's motion for summary judgment or at trial but not in determining whether the nonmovant presented a prima facie case. *Id.* If the nonmovant carries that burden, the court must deny the motion unless "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." CIV. PRAC. & REM. § 27.005(d).

"We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005." *Watson v. Hardman*, 497 S.W.3d 601, 605 (Tex. App.—Dallas 2016, no pet.).

### DISCUSSION

**I.    Did appellants show by a preponderance of the evidence that Badu was exercising a right triggering the application of chapter 27 when she posted her comments on Twitter and Facebook?**

In their first issue, appellants assert, as they did before the trial court, that Badu's Facebook and Twitter postings were exercises of her right of association and right of free speech.

Whether Badu's statements were true or false, defamatory or not, has no bearing on our determination of whether the statements constitute an exercise of a constitutionally protected

right.  *See Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App.—Dallas 2014, pet. denied).  Chapter 27 defines "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  Civ. Prac. & Rem. § 27.001(2).  In *Backes v. Misko*, we concluded that a suit against a defendant who allegedly conspired with another person who posted purportedly defamatory messages on social media, including Facebook, was an attack on the defendant's right of association with the alleged defamer.  486 S.W.3d 7, 20 (Tex. App.—Dallas 2015, pet. denied).  In doing so, we noted that individuals have the right to associate with each other on social media, particularly when it involves a common interest.  *Id.* at 27.  In *Backes*, the common interest was in horse breeding.  Here, the common interest of those associated with each other on Badu's Facebook fan page and her Twitter account is Badu the artist.  The discussions about Badu and her career and artistic endeavors fall under the "right of association" as they are communications between individuals who join together to collectively express, promote, pursue, or defend common interests in Badu and her career.  Civ. Prac. & Rem. § 27.001(2); *see also Backes*, 486 S.W.3d at 20.  Accordingly, we sustain appellants' first issue as to their assertion that Badu's comments were the exercise of her right of association.  Consequently, we need not determine whether Badu's communications were an exercise of her right of free speech.  Tex. R. App. P. 47.1.

## II.     Did Levatino establish his prima facie case by clear and convincing evidence?

Because we conclude Badu's comments fall within the coverage of the TCPA, we must next consider whether Levatino met his burden of establishing, by clear and specific evidence, a prima facie case on his defamation claim.  Civ. Prac. & Rem. § 27.005(c).

A prima facie case is the "minimum quantum" of "unambiguous," "explicit" evidence "necessary to support a rational inference that the allegation of fact is true."  *In re Lipsky*, 460

S.W.3d 579, 590 (Tex. 2015) (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004, orig. proceeding) (per curiam) (quoting *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied))). "Clear and specific evidence" of each essential element of a claim is more than "mere notice pleading." *Lipsky*, 460 S.W.3d at 590. Instead, a plaintiff must "provide enough detail to show the factual basis for its claim." *Id.* at 590–91. A nonmovant may defeat a TCPA motion to dismiss if the pleadings and evidence establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the nonmovant. *Id.* at 591. The TCPA requirement of proof by clear and specific evidence does not impose an elevated evidentiary standard, does not categorically reject circumstantial evidence, and does not impose a higher burden of proof than that required of the plaintiff at trial. *Id.*; *Moldovan*, 2016 WL 4131890, at *4. When determining whether the nonmovant presented a prima facie case, we consider only the pleadings and evidence in favor of the nonmovant's case. *Moldovan*, 2016 WL 4131890, at *5.

To prevail on a defamation claim, the claimant must prove the publication of a false statement of fact to a third party, that was defamatory concerning the claimant, with the requisite degree of fault, and damages, in some cases. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

In their second issue, appellants maintain, in part, Badu's May 29, 2014 Facebook and Twitter posts that she had never had a manager in her professional career cannot be actionable because they do not mention Levatino. To establish that the posts concerned Levatino, he needed to prove the posts were specifically directed towards him. *Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 144–45 (Tex. App.—Fort Worth 2009, pet. denied). In other words, in order to entitle one to maintain an action for an alleged defamatory statement, it must appear that he is the person with reference to whom the statement is made. *Id.* (citing *Newspapers, Inc.*

–7–

*v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960)). However, it is likewise true that it is not necessary for the individual referred to be named if those who knew and were acquainted with him understood from reading the posts that it referred to him. *Backes*, 486 S.W.3d at 25 (citing *Matthews,* 339 S.W.2d at 894; and *Kaufman,* 291 S.W.3d at 145; and *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.,* 242 S.W.3d 518, 525 (Tex. App.—El Paso 2007, no pet.) ("A publication is 'of and concerning the plaintiff' if persons who knew and were acquainted with him understood from viewing the publication that the defamatory statement referred to him."))).

In response to appellants' motion to dismiss, Levatino presented evidence persons who knew him, or knew of him, understood Badu's posts to refer to him. More specifically, Levatino presented the declaration of Nazanin Fatemian, National Program Manager for the House of Blues Forward Foundation, in which she testified that she follows Badu's Facebook page, she viewed Badu's Facebook postings wherein she stated that she had never had a manager, and she was shocked by the posts because she knew them to be false based on her numerous business and personal interactions with Levatino and Badu. Levatino also presented various Facebook posts including one that tagged Levatino's online profile and others responding to Badu's post stating:

> I see what your [sic] saying, but you do employ Paul Levatino as your manager.
>
> Here's the thing, in \*\*numerous\*\* press releases and news articles [Levatino] was specifically named as your manager. . . .
>
> Well then who's paul [sic] Levatino, he claims to have managed you.

This evidence unambiguously and explicitly states these individuals knew upon reading the posts that Badu was denouncing Levatino as her manager.

Moreover, it is well settled that the meaning of a publication depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements as appellants urge. *Lipsky*, 460 S.W.3d at 594; *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002).

Moreover, appellants' attempt to separate Badu's post on Facebook from her posts on Twitter are unavailing. *See*, *e.g.*, *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at \*11–12 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.). While Badu's initial posts did not explicitly name Levatino, her subsequent posts to Twitter clearly reference Levatino. Accordingly, we overrule appellants' second issue as to the identity of the subject of her posts.

In the second part of their second issue, appellants maintain Badu's comments were not calculated to defame Levatino. A statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach a person's honesty, integrity, virtue, or reputation. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied).

Levatino urges Badu's posts injured him in his office, profession, or occupation because they stripped him of his former job title, erased several years of his career, and made it appear as if he had been dishonest in representing he was Badu's manager. In support of this contention, Levatino presented evidence that he was Badu's general manager and was known in the industry as such, that he was responsible for everything Badu, short of her actual performance, that Badu repeatedly told him that he was her manager, and that Badu was aware of press articles identifying him as her manager and never sought to have those statement retracted. In addition, Levatino presented evidence through Fatemian that Badu's statements were damaging and harmful to his reputation, and were an attempt on Badu's part to eradicate or undue several years of Levatino's professional career and to damage his professional reputation. Fatemian further testified Badu's statements attacked Levatino's honesty and integrity. Through his declaration, Levatino testified that he had built his career in the music and entertainment industry on trust and honesty, that in the music industry your reputation is the most important factor in conducting a

–9–

profitable business, and that after Badu made her posts industry professionals with whom Levatino had direct relationships either did not return his calls or just stayed away from doing business with him. We conclude this evidence is sufficient proof at this stage of the litigation to serve as prima facie proof of a defamatory statement concerning Levatino because it is clear and convincing evidence of injury to Levatino's reputation. Accordingly, we overrule appellants' second issue as to the potential defamatory nature of Badu's comments.

In their fifth issue, appellants argue Levatino failed to present evidence of special damages to support his defamation claim. The common law distinguishes defamation claims as either per se or per quod. *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed, and proof of damages is not required to defeat a dismissal motion under the TCPA. *See* CIV. PRAC. & REM. § 27.005(c); *Hancock*, 400 S.W.3d at 63–64. Defamation per se is itself broken down into separate categories of falsehoods. Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Remarks that adversely reflect on a person's fitness to conduct his or her business or trade or that injure a person in his office, profession, or occupation are also deemed defamatory per se. *Hancock,* 400 S.W.3d at 66; *Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 581. And whether a statement qualifies as defamation per se is generally a question of law to be decided by the court. *Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 581. Statements are defamatory per quod if they are not obviously hurtful and require the plaintiff to show their defamatory meaning through extrinsic evidence. *Meisel v. U.S. Bank, N.A.*, 396 S.W.3d 675, 680 (Tex. App.—Dallas 2013, no pet.). If statements are defamatory per quod, a plaintiff may recover only actual, compensatory, and exemplary damages, not nominal damages.

*Hancock*, 400 S.W.3d at 65. Actual or compensatory damages are intended to compensate a plaintiff for the injury he incurred and include general damages, which are non-economic damages such as for loss of reputation or mental anguish, and special damages, which are economic damages such as for lost income. *Id.*; *MacFarland v. Le-Vel Brands LLC*, No. 05-16-00672-CV, 2017 WL 1089684, at *12 (Tex. App.—Dallas Mar. 23, 2017, no pet.). We need not decide whether the comments, if defamatory, are defamatory per se or per quod because, as stated below, we conclude Levatino presented at least the minimum quantum of clear and specific evidence of damages.

We note that bare, baseless opinions are not a substitute for clear and specific evidence required to establish a prima facie case. *Lipsky*, 460 S.W.3d at 592. General averments of direct economic losses and lost profits, without more, does not satisfy the minimum requirements of the TCPA. *Id.* at 593. In *Lipsky*, the supreme court concluded that while the affidavit of Range's vice president stated that Range "suffered direct pecuniary and economic losses," it was devoid of any specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses. *Id.* In *Moldovan*, we concluded that evidence of damage to Polito's reputation, by way of negative posts concerning Polito, and loss of income, by decreased bookings and a drop in income, was sufficient to establish a prima facie case of damages. *Moldovan*, 2016 WL 4131890, at *10.

In response to appellants' motion to dismiss, Levatino presented evidence that: he received compensation for his management services; prior to his association with Badu, he had built a career in the music and entertainment industry based on trust and honesty and others had engaged his services; he gave up other business opportunities to work for Badu; having Badu acknowledge publically that he was her manager held great value to Levatino personally and professionally; in the music industry a person's reputation is the most important factor in

–11–

conducting profitable business because if you have a reputation of being a liar or are not as connected as you say you are, people will not give you opportunities; by her posts, Badu indicated that Levatino's career as her manager never existed and that he falsely held himself out as her manager; a music industry professional viewed Badu's comments as damaging Levatino's professional reputation and attacking his honesty and integrity; following Badu's posts, Levatino's business partners rejected him; Levatino tried to reach out to former clients and business associates with whom he had direct relationships for meetings and possible contract work, but they either would not return his calls or just stayed away from doing business with him; and Levatino and Badu co-managed an electric hip-hop group called The Cannabinoids and since Badu's posts, Levatino has not received any income related to that group.

This evidence is more than the bare, baseless evidence Range presented as to damages in *Lipsky* and, although some of this evidence is circumstantial, it falls closer to the type of evidence presented in *Moldovan*, which we found to establish at least a prima facie case of damages. Clear and specific evidence includes relevant circumstantial evidence and the rational inferences that may be drawn therefrom. *Lipsky*, 460 S.W.3d at 591. The evidence presented by Levatino, and the reasonable inference therefrom, establish Badu's comments have damaged Levatino's business and integrity reputations and have impacted his ability to conduct his business and to profit from same. At trial, each party may develop additional evidence to support their contentions. *Moldovan*, 2016 WL 4131890, at *10. However, at this stage, Levatino has offered at least a minimum quantum of clear and specific evidence that Badu's posts were the cause of damage to Levatino. Accordingly, we overrule appellants' fifth issue.

### III. Did Appellants establish by a preponderance of the evidence their defenses of opinion and substantial truth?

We address appellants' third and fourth issues together as they are interrelated and stem from appellants' assertion that when Badu used the term "manager" she meant "artist's

manager." From this assertion, appellants urge that when Badu stated she never had a manager she was stating her subjective opinion as to what she meant by "manager," and that statement was substantially true.

Badu's statements are opinions only if they are not objectively verifiable statements of fact. *Am. Heritage Capital*, 436 S.W.3d at 875; *Bentley*, 94 S.W.3d at 581. Whether a statement is a statement of fact or opinion is a question of law and depends on the analysis of a statement's verifiability and the entire context in which it was made. *Am. Heritage Capital*, 436 S.W.3d at 875; *Bentley*, 94 S.W.3d at 581. We conclude the issue of whether Levatino was Badu's manager is inherently a question of fact to be determined by the trier of fact. The fact that appellants advance a more narrow definition of manager than Levatino does not convert Badu's statements into statements of opinion.

It was appellants' burden to prove by a preponderance of the evidence that Badu's statements were substantially true. *See* CIV. PRAC. & REM. § 27.005(d); *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013). Appellants merely relied on Levatino's admission he was not Badu's talent manager and statements of Badu's lawyer that an artist's manager is synonymous with a talent manager. This evidence is not sufficient to establish Badu's statement concerning her manager and Levatino were substantially true. Moreover, the test used in deciding whether the posts were substantially true involves consideration of whether the alleged defamatory statements were more damaging to Levatino's reputation than a truthful statement would have been. *See Neely*, 418 S.W.3d at 63. This evaluation involves looking to the "gist" of the publication. *Id.* A publication with specific statements that err in the details but that correctly convey the gist of a story is substantially true. *Id.* On the other hand, if a publication taken as a whole is more damaging to the plaintiff's reputation than a truthful publication would have been, then the publication is not substantially true and is actionable. *See id.* We determine a

–13–

publication's gist or meaning by examining how a person of ordinary intelligence would view it. *Id.* at 64.

The record before this Court contains some evidence a person of ordinary intelligence would understand Badu's statements to mean Levatino was never Badu's manager in any capacity. Levatino presented evidence that in the music industry the term "manager" is not synonymous with the term "talent manager," and that persons understood Badu's statements to denounce Levatino as ever having been her manager, damaging his reputation. This is unambiguous and explicit evidence that Badu's statements were more damaging to Levatino's reputation than a publication stating he was never her talent manager. Consequently, appellants failed to establish by a preponderance of the evidence Badu's statements were substantially true and the record at this stage of the litigation militates against such a finding.

Accordingly, we overrule appellants' third and fourth issues.

## IV.    Does chapter 27 apply to Levatino's claim against Apple Tree?

In their sixth issue, appellants assert the trial court should have dismissed Levatino's defamation claims against Apple Tree because Badu's statements were not made on behalf of Apple Tree. Levatino urges that Badu is the vice-principal of Apple Tree and thus it may be held responsible for her actions. Appellants respond citing *Minyard Food Stores, Inc. v. Goodman* for the proposition that a company cannot be liable for the statements of a representative when the statements were neither in furtherance of the company's business, nor for the accomplishment of the object for which the employee is employed. 80 S.W.3d 573 (Tex. 2002). Appellants' reliance on *Minyard* in this case is misplaced. First of all, *Minyard* was a respondeat superior case, not a vice-principal case. In addition, the issue presented in *Minyard* was whether an employee who defames another employee to his employer during a workplace misconduct

investigation was acting within the course and scope of his employment. *Id.* at 574. That is not the situation here.

Corporations can act only through their agents. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997); *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 402 (1934), *overruled in part on other grounds by Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987). When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself. *Fort Worth Elevators*, 70 S.W.2d at 406. "Vice principal" encompasses: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom the master has confided the management of the whole or a department or a division of the business. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex. 1998).

Before we analyze the evidence presented in response to appellants' motion to dismiss, we take note of the types of job positions and authority which courts have found to be vice-principals. In *GTE Southwest*, the supreme court affirmed a jury award of exemplary damages based on the jury's finding that the corporate employee was a vice-principal based on evidence that he "was the highest ranking management person stationed at the Nash facility, and that [he] had authority to employ, direct, and discharge employees." *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Citing *GTE Southwest*, the supreme court has not disturbed a finding that a car dealership's general manager, comptroller, and used car sales manager were vice-principals whose maliciously defamatory statements were the statements of the business for which they worked. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009). This Court has decided the acting manager of a bar-restaurant who verbally encouraged patrons to physically attack another patron of the bar was a vice-principal whose conduct was

that of the business entity. *Then W., Inc./Bait House, Inc. v. Sorrells*, No. 05-01-01874-CV, 2002 WL 1397477, at *6 (Tex. App.—Dallas June 28, 2002, no pet.) (not designated for publication). The Corpus Christi court of appeals determined that a person "who writes checks and hires and fires employees" is a vice-principal whose statements are those of her employer. *Fontenot Petro-Chem & Marine Services, Inc. v. LaBono*, 993 S.W.2d 455, 460 (Tex. App.—Corpus Christi 1999, pet. denied). The Texarkana court of appeals concluded a trucking company's "terminal manager with the right to direct and discharge" employees was a vice-principal. *Rainbow Exp., Inc. v. Unkenholz*, 780 S.W.2d 427, 431 (Tex. App.—Texarkana 1989, writ denied). This Court concluded the head of store security was a vice-principal because as the head of security "he was 'confided the management' of the security department or division with wide discretion under Treasure City's store directive." *Treasure City v. Strange*, 620 S.W.2d 811, 814 (Tex. Civ. App.—Dallas 1981, no writ). In contrast to these jobs and positions, an hourly wage employee of Walmart with no authority to speak on behalf of Walmart was not a vice-principal and her defamatory statements were not the statements of Walmart. *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 289 (Tex. App.—Corpus Christi 2000, pet. denied).

In response to appellants' dismissal motion, Levatino presented his declaration in which he testified that Badu is the CEO of Apple Tree and has complete authority to speak on behalf of the company regarding any and all business related to Badu, Apple Tree, or any of Badu's related business entities. Thus, the record supports a finding that at least two of the *Mobil Oil* categories of corporate agents that are vice principals exist in this case. Accordingly, Levatino presented evidence that Badu is a vice-principal of Apple Tree.

In order for Badu's statements to be attributed to Apple Tree, they must be referable to Apple Tree's business. *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ). Levatino presented evidence that the majority of Badu's business is

conducted through Apple Tree. Thus, Badu's communications with her fans cannot be said to be separate and apart from the business of Apple Tree. Consequently, we rule against appellants on their sixth issue.

**V.     To award the non-movant attorney's fees, must the trial court make a finding the motion to dismiss was frivolous or solely intended to delay?**

In their final issue, appellants assert the trial court should not have awarded Levatino attorney's fees absent a finding their motion to dismiss was frivolous or solely intended to delay. If the court finds that a motion to dismiss filed under chapter 27 is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party. CIV. PRAC. & REM. § 27.009(b). The record before us does not show that the trial court found the motion to dismiss was frivolous or solely intended to delay. Accordingly, we sustain appellants' seventh issue, and remand the issue of attorney's fees and costs to the trial court for a determination as to whether appellants' motion was frivolous or solely intended to delay. *See Fawcett v. Grosu*, 498 S.W.3d 650, 666 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

## CONCLUSION

We reverse, in part, that portion of the trial court's order awarding Levatino attorney's fees and cost, and remand the attorney's fees and cost issue to the trial court to determine whether appellants' motion was frivolous or solely intended to delay. We otherwise affirm the trial court's order.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

161380F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

APPLE TREE CAFE TOURING, INC.
AND ERICA WRIGHT, Appellants

No. 05-16-01380-CV    V.

PAUL LEVATINO, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-12742.
Opinion delivered by Justice Schenck.
Justices Francis and Brown participating.

In accordance with this Court's opinion of this date, we **REVERSE**, in part, that portion of the trial court's order awarding Levatino attorney's fees and cost, and **REMAND** the attorney's fees and cost issue to the trial court to determine whether appellants' motion was frivolous or solely intended to delay.  We otherwise **AFFIRM** the trial court's order.

It is **ORDERED** that appellee PAUL LEVATINO recover his costs of this appeal from appellants APPLE TREE CAFE TOURING, INC. AND ERICA WRIGHT.

Judgment entered this 3rd day of August, 2017.