

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00819-CV

Margarita **MALDONADO**,
Appellant

v.

Trenton **FRANKLIN** and Karina Franklin,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-24167
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: September 30, 2019

AFFIRMED

In this interlocutory appeal, Margarita Maldonado challenges the denial of her motions to dismiss the claims brought against her by neighbors Trenton and Karina Franklin. Maldonado's motion to dismiss and amended motion to dismiss were filed pursuant to the Texas Citizens Participation Act ("TCPA").[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. We affirm

---

[1] A motion to dismiss under the Texas Citizens Participation Act is known as an "Anti-SLAPP" motion; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *See Serafine v. Blunt*, 466 S.W.3d 352, 356-57 (Tex. App.—Austin 2015, no pet.).

the denial of Maldonado's motions to dismiss and remand to the trial court for further proceedings in accordance with this opinion.

## BACKGROUND

Trenton and Karina Franklin moved into the home located at 403 Aster Trail in the Stonewall Ranch Subdivision of San Antonio, Texas in September 2017. Margarita Maldonado lives in the home immediately behind the Franklins' house and can see into the Franklins' backyard from her house. Shortly after the Franklins moved in, Maldonado began complaining directly to the Franklins and in online posts on a neighborhood forum about the way the Franklins treated their dog — leaving it outside 24 hours a day, seven days a week. Specifically, Maldonado was upset that the Franklins left their dog outside all day and night regardless of the weather. Maldonado stated she could hear the dog's repeated whining and howling inside her own home and the dog's crying kept her awake at night and caused her emotional distress during the day. Maldonado contacted the homeowners association for the neighborhood, which has a covenant proscribing noisy animals, but it declined to take any action. Without naming the Franklins, Maldonado posted comments online expressing her concern about the health and welfare of "[her] neighbor's" dog, complaining about having to listen to the crying dog "next door," and urging people in the neighborhood not to mistreat their dogs by leaving them outside in the heat without access to shade or cool water. In response, Mr. Franklin identified himself as the neighbor Maldonado was referring to and he entered the conversation on the Next Door website; at some point, he and Maldonado exchanged direct messages about the dog. Maldonado also posted an email referencing the Franklins and their dog on the neighborhood's email group, along with a photograph showing the dog in a small fenced side area of the backyard where the air conditioning units are located. At one point, Maldonado placed a dog bed in the dog's side yard with a card stating it was a gift for the dog. The Franklins acknowledged the bed with a thank you card. In

December 2017, the Franklins filed suit against Maldonado for invasion of privacy by intrusion on seclusion, alleging she was engaged in a "campaign of systematic harassment" over the "alleged mistreatment of their dog." They also requested injunctive relief against her.

During May and June of 2018, while the lawsuit was pending, Maldonado called Animal Control Services (ACS) several times to report that the Franklins' dog was outside without shade even though the heat index was over 100 degrees. An ACS officer responded to each call and found no actionable neglect or abuse. Maldonado acknowledges the ACS officers told her there was nothing they could do. In June 2018, Maldonado picketed for five days by walking along the neighborhood sidewalks, including in front of the Franklins' home, carrying signs that said "Heat index 100+", "Bring the dog in," and "If you're hot they're hot." The Franklins called the police and sought to have Maldonado arrested, but she was not. The Franklins subsequently amended their petition to add claims for slander, defamation, intentional infliction of emotional distress, and trespass. The trial court granted a temporary injunction against Maldonado after a hearing in August 2018, but the injunction order was vacated as void on appeal. *See Maldonado v. Franklin*, No. 04-18-00589-CV, 2019 WL 451735 (Tex. App.—San Antonio Feb. 6, 2019, no pet.) (mem. op.). Maldonado filed an Anti-SLAPP motion and amended motion to dismiss the Franklins' claims as targeting her First Amendment rights. The trial court held a hearing on the motions, but did not rule within thirty days; the motions were therefore denied by operation of law. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a). Maldonado appealed.

**MOTION TO DISMISS UNDER TEXAS CITIZENS PARTICIPATION ACT**

The TCPA was enacted to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see In re Lipsky*,

460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) (noting the TCPA protects citizens who "petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them"). Toward that purpose, the statute provides for the expedited dismissal of a legal action that is "based on, relates to, or is in response to" a defendant's exercise of the First Amendment rights to free speech, petition, or association unless the plaintiff establishes a prima facie case for each claim. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(c). Courts are required to construe the TCPA liberally in order to give full effect to its purpose and intent. *Id.* § 27.011(b); *see Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "[W]e construe [a] statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008)). The legislative intent is determined by considering the statute as a whole, rather than as isolated parts. *Id.*

The filing of a motion to dismiss under the TCPA triggers a burden shifting mechanism which ensures that legal actions to which the TCPA applies have merit and are not brought "to intimidate or silence" those who exercise First Amendment rights listed in the statute. *In re Lipsky*, 460 S.W.3d at 584; *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 602-03 (Tex. App.—San Antonio 2018, pet. denied). A party moving for dismissal under the TCPA bears the initial burden to show by a preponderance of the evidence that the legal action against her is "based on, relates to, or is in response to" the exercise of either: (1) the right to free speech; (2) the right to petition; or (3) the right of association. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(b); *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (movant's initial burden is to show the TCPA applies to the legal action). If the movant makes this showing, the burden shifts to the respondent to establish by "clear and specific evidence a

prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see S & S*, 564 S.W.3d at 847. If the respondent fails to satisfy this burden, his claim against the movant must be dismissed. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b), (c); *see S & S*, 564 S.W.3d at 847. If the respondent successfully establishes that the claim has merit, then the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of any valid defense. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). If the movant satisfies this burden, the trial court must dismiss the legal action. *Id.* Dismissal of a legal action under the TCPA is with prejudice to the refiling of the legal action. *See LegacyTexas Bank v. Harlan*, No. 05-18-00039-CV, 2018 WL 2926397, at *5 (Tex. App.—Dallas June 7, 2018, no pet.) (mem. op.).

In determining whether the parties have met their respective burdens, the court considers the pleadings and any supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *see In re Lipsky*, 460 S.W.3d at 587; *see also Rio Grande H2O Guardian v. Robert Muller Family P'ship Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *3 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem. op.) (stating that "[u]nlike other types of cases where pleadings are not considered evidence, section 27.006 of the Act, which is entitled 'Evidence,' expressly provides . . . the court shall consider the pleadings" as evidence in determining whether the legal action should be dismissed). The trial court does not hear live testimony on a TCPA motion to dismiss. *In re Lipsky*, 460 S.W.3d at 587.

On appellate review, the court conducts a de novo evaluation of the trial court's ruling on the motion to dismiss. *S & S*, 564 S.W.3d at 847; *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.) (appellate court reviews each step of the TCPA analysis de novo). In reviewing the denial of a motion to dismiss under the TCPA, we view the pleadings and evidence in the light most favorable to the non-movant. *Elkins*, 553 S.W.3d at 603. If resolution

of the case also raises issues of statutory construction, we review those de novo as well. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017).

### *Timeliness of Maldonado's Anti-SLAPP Motions to Dismiss*

We begin by determining whether Maldonado's Anti-SLAPP motion and amended motion to dismiss were timely filed with respect to any of the Franklins' claims. Section 27.003(b) requires a motion to dismiss under the TCPA to be filed no later than the sixtieth day after the date of service of the "legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). The statute defines a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6).

The Franklins filed their original petition asserting a single cause of action for invasion of privacy by intrusion on seclusion and seeking a temporary injunction against Maldonado on December 29, 2017. The factual allegations asserted in support of the injunction and invasion of privacy claim were:

(a) Openly posting false statements on a neighborhood bulletin board website, Next Door, in an attempt to incite anger from among neighbors and harm the Franklin's [sic] reputation;

(b) Privately messaging both Plaintiffs, chastising them for their ways, lifestyle, etc.;

(c) Approaching and interrogating the Plaintiffs' minor son while he was walking the family dog;

(d) Posting comments on the neighborhood website which makes it obvious that she continually observes Plaintiffs and intrudes on their seclusion and right to privacy;

(e) Screaming at Trenton Franklin while he exits his home;

(f) Coming to Plaintiffs' front door to berate them;

(g) Leaving a dog bed in their yard.

The record shows Maldonado was served with process of the lawsuit on January 4, 2018. No Anti-SLAPP motion to dismiss was filed challenging the original petition.

Approximately six months later, on June 6, 2018, the Franklins filed a first amended petition adding new claims for intentional infliction of emotional distress and slander, and reasserting the original invasion of privacy claim and request for injunction. The first amended petition added new factual allegations of: "[p]icketing in front of Plaintiffs' home for days on end;" "[r]epeatedly calling the City of San Antonio's Animal Control Services Division, resulting in visits to Plaintiff's [sic] home;" and "[p]hotographing and posting the photographs of Plaintiffs' yard in public forums." On July 12, 2018, within sixty days of the first amended petition, Maldonado filed an Anti-SLAPP motion seeking dismissal of all the claims asserted in the Franklins' first amended petition; she also filed an original answer consisting of a general denial.

The Franklins subsequently filed a second amended petition and a third amended petition, which is their live pleading. The Franklins' third amended petition asserted a new claim for libel in addition to the pre-existing claim for slander, and a new claim for trespass; the Franklins also reasserted their claims for invasion of privacy/intrusion on seclusion and intentional infliction of emotional distress. The Franklins' third amended petition added two new factual allegations: "[p]osting statements online to the effect that the Plaintiffs have engaged in criminal behavior in the treatment of their dog;" and "[s]paying [sic] water over the Plaintiffs' fence into their yard." Within sixty days, Maldonado filed an amended Anti-SLAPP motion to dismiss all the Franklins' claims alleged in their third amended petition.

The Franklins filed a response objecting that both Anti-SLAPP motions were untimely because Maldonado waited seven months after the lawsuit was filed before filing a motion to dismiss; therefore, the motion and amended motion were barred as a matter of law. The trial court conducted a hearing on the motions to dismiss on September 28, 2018 and heard arguments

concerning the timeliness of Maldonado's motions, as well as the applicability of the TCPA and whether the Franklins established a prima facie case on their claims. At the conclusion of the hearing, the trial court took the entire matter under advisement. As noted above, Maldonado's request for dismissal of the lawsuit was denied by operation of law rather than by court order. *See id.* § 27.008(a).

On appeal, both sides address the timeliness of Maldonado's motions to dismiss. The Franklins reiterate their argument that both Maldonado's motion and amended motion to dismiss were untimely, arguing that the TCPA's goal of early dismissal of SLAPP suits would be undermined by resetting the sixty-day deadline every time an amended pleading is filed. The Franklins rely on cases holding the legislature did not intend to create "a perpetual opportunity to file a motion to dismiss whenever a pleading qualifies as a 'legal action' under Section 27.001(6)." *See Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 193 (Tex. App.—El Paso 2014, no pet.) (declining to construe a "legal action" to include any amended pleading in light of the TCPA's purpose to dismiss SLAPP suits quickly without prolonged and costly proceedings); *see also In re Estate of Check*, 438 S.W.3d 829, 836 (Tex. App.—San Antonio 2014, no pet.) (similarly rejecting the idea that the legislature intended the subsequent filing of any substantive pleading related to the TCPA to reset the deadline for filing a motion to dismiss).

Maldonado argues that when a plaintiff adds a new claim or party in an amended petition, the sixty-day deadline for filing a motion to dismiss is reset with respect to that new claim or party. Therefore, Maldonado asserts her original motion and amended motion to dismiss were each timely as to the new claims added in the Franklins' amended petitions. In other words, Maldonado contends her original motion to dismiss was timely as to the new claims for intentional infliction of emotional distress and slander added in the Franklins' first amended petition, and her amended motion to dismiss was timely as to the new libel claim and the new trespass claim added in their

third amended petition. Maldonado concedes that her motion and amended motion to dismiss were untimely with respect to the Franklins' invasion of privacy claim because it was asserted in the Franklins' original petition and repeated without any change in the subsequent amended petitions.

In *Check*, one of the appellant's arguments was that his Anti-SLAPP motion to dismiss was timely because it was filed within sixty days of the appellee's amended counterclaim. *Check*, 438 S.W.3d at 836. In concluding that the filing of the amended pleading did not reset the deadline for the motion to dismiss, we stressed that the amended counterclaim did not add a new claim or party. *Id.* at 836-37 (stating that "in the absence of new parties or claims, the deadline for filing a motion to dismiss would run from the date of service of the original "legal action""). Other courts have similarly stated that an amended petition asserting new claims based on new factual allegations may reset the TCPA deadline "as to the newly added substance." *See Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *James v. Calkins*, 446 S.W.3d 135, 142 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)); *see also Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.). However, merely adding factual details in a subsequent petition does not restart the deadline "if the same essential factual allegations as to the claim were present in an earlier petition." *Mancilla*, 2018 WL 6850951, at *3 (citing *Paulsen v. Yarrell*, 455 S.W.3d 192, 198 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). "In other words, the filing of an amended pleading that does not alter the essential nature of an action does not restart the deadline." *Id.* (holding that "the crux" of the claim asserted in original petition was improper acquisition and disclosure of proprietary information and amended petition did not make "substantive alterations that reformulated" the original claim) (internal citations omitted). Likewise, asserting claims in a supplemental petition that are a "subset" of the claims in the original petition does not suffice to reset the TCPA deadline. *See Jordan*, 510 S.W.3d at 198-99 (station manager's purportedly

defamatory radio advertisement about mayoral candidate was underlying factual allegation of the claims in both original and supplemental petition). In *James*, the claims added in the amended petition were based on "substantively different factual allegations" than the previous petition and thus warranted a new sixty-day deadline. *See James*, 446 S.W.3d at 145-46 (original petition alleged conspiracy to communicate ex parte in guardianship proceeding, while live amended petition dropped conspiracy and added "substantively different factual allegations" and "new causes of action" for fraud, statutory barratry, and fraudulent lien after the TCPA's effective date, so the Act applied to those claims).

Here, setting aside the request for injunctive relief, the only claim asserted in the Franklins' original petition was invasion of privacy by intrusion on seclusion, i.e., infringing on the quiet enjoyment of their home. The majority of the current (live) factual allegations against Maldonado were present in the original petition in support of the invasion of privacy claim and request for injunction. The intentional infliction of emotional distress cause of action added in the first amended petition could have been brought in the original petition based on any or all of the original factual allegations, except perhaps for (g). The first amended petition did not tie the new emotional distress claim to any of the new factual allegations of picketing, calling ACS, or posting photographs. The amended petition states the new cause of action is based on "the actions" of Maldonado, which includes the conduct alleged in the original petition, and which "are intentional, extreme, outrageous, and intended to cause Plaintiffs to suffer emotional distress." The sixty-day deadline did not reset for the intentional infliction of emotional distress claim because "the same essential factual allegations as to the claim were present in an earlier petition." *Mancilla*, 2018 WL 6850951, at *3; *Paulsen*, 455 S.W.3d at 198; *Jordan*, 510 S.W.3d at 198-99. Therefore, Maldonado's motion to dismiss was not timely as to that cause of action.

When the Franklins added the cause of action for slander in their first amended petition, however, they did specifically base that new claim on the substantively new factual allegation that Maldonado "repeatedly called [ACS] asserting that the Plaintiffs have engaged in criminal conduct in the treatment of their dog" and such representation was false. That was the first time the Franklins accused Maldonado of making false verbal reports to a government agency alleging they engaged in criminal conduct. Because a new cause of action for slander was based on a new factual allegation of substantively different conduct than the previously alleged facts, the sixty-day deadline for a motion to dismiss was reset as to that new claim; therefore, Maldonado's motion to dismiss was timely as to the slander claim. *See James*, 446 S.W.3d at 145-46; *see also Check*, 438 S.W.3d at 836-37.

In their third amended petition, the Franklins reasserted their slander claim based on untrue complaints to ACS of "criminal conduct" and added a claim for libel based on Maldonado falsely "ma[king] similar statements online to the effect that Plaintiffs are guilty of cruel treatment and neglecting their dog." They also added a new factual allegation that Maldonado "post[ed] statements online to the effect that the Plaintiffs have engaged in criminal behavior in the treatment of their dog." The new libel claim was therefore based on a new and substantively different factual allegation that Maldonado made *written* statements online accusing the Franklins of engaging in "criminal behavior" by neglecting their dog and treating it cruelly. The original petition alleged only that Maldonado posted "false statements" about the Franklins on Next Door and does not include any assertion that Maldonado accused the Franklins of "criminal behavior." The first amended petition adding slander was confined to verbal accusations of criminal conduct made to a governmental agency; the libel claim was based on online postings, not official complaints. Slander and libel are two distinct types of defamation. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). We therefore conclude that Maldonado's amended motion to

dismiss was timely as to the libel claim because it was a new and different cause of action based on substantively different factual allegations. *See James*, 446 S.W.3d at 145-46.

Finally, the trespass claim added in the third amended petition is based on Maldonado having "committed acts of trespass by entering Plaintiffs' property after being advised against doing so and knowingly and intentionally causing things to cross the boundary of the premises." While a new factual allegation that Maldonado sprayed water over the fence was added, a trespass claim based on things crossing the boundary of the property could have been raised in the original petition based on the allegation that Maldonado left a dog bed in the Franklins' yard. Therefore, Maldonado's amended motion to dismiss was not timely as to the trespass claim because the "same essential factual allegations as to the claim were present in an earlier petition." *Mancilla*, 2018 WL 6850951, at *3; *Paulsen*, 455 S.W.3d at 198; *Jordan*, 510 S.W.3d at 198-99.

In sum, we conclude that Maldonado's motion and amended motion to dismiss were timely filed only as to the Franklins' claims for slander and libel.

Finally, even though Maldonado acknowledges her motion to dismiss was untimely with respect to the invasion of privacy claim raised in the original petition, she argues there is "good cause" for *this* court to effectively grant an extension and apply her motion to dismiss to the invasion of privacy claim and dismiss it on appeal.[2] In support, Maldonado relies solely on her broad interpretation of "the court" as used in section 27.003(b) and cites no authority showing an appellate court has jurisdiction to grant an extension when no such request was made in the trial court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) (vesting "the court" with discretion to

---

[2] To the extent Maldonado argues or implies that a Rule 11 Agreement between the parties in January 2018 operated as an extension of the deadline for filing an Anti-SLAPP motion to dismiss, we disagree. The record shows that letter agreement only "extended Defendant's deadline to answer Plaintiff's petition until the parties have had the opportunity to resolve the underlying claims with an Agreed Permanent Injunction." By its express terms, it did not extend the time to file an Anti-SLAPP motion.

extend the deadline for filing a motion to dismiss upon a showing of good cause). Construing "the court" in section 27.003(b) in the context of the TCPA as a whole, it is apparent that it refers to the trial court, which is the court in which the motion to dismiss must be filed, heard, and ruled on within the TCPA's strict timelines. *See id.* §§ 27.003–.005; *see also Check*, 438 S.W.3d at 836; *Shiflet v. Port Arthur Patrolmen's Hunting Club*, No. 09-19-00012-CV, 2019 WL 4064573, at *2 (Tex. App.—Beaumont Aug. 29, 2019, no pet. h.) (mem. op.). The record shows Maldonado did not request an extension for the motion's late filing in the trial court and did not respond to the Franklins' untimeliness objection with arguments or evidence of good cause at the trial court hearing. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Maldonado's suggestion that this court has discretion to allow the late filing as to the invasion of privacy claim under section 27.003(b), absent a request in the trial court, has been rejected. *See*, *e.g.*, *Miller Weisbrod*, 511 S.W.3d at 194. Without a request for an extension and a ruling in the trial court, nothing is preserved for review on the matter. TEX. R. APP. P. 33.1(a); *Check*, 438 S.W.3d at 836; *Shiflet*, 2019 WL 4064573, at *2.

Having determined that Maldonado's motion and amended motion to dismiss were timely filed only as to the Franklins' claims for slander and libel, we proceed to the next step of the TCPA analysis only on those claims.

### *Does the TCPA Apply to the Legal Action?*

As the movant, Maldonado has the burden to show by a preponderance of the evidence that the Franklins' lawsuit is "based on, relates to, or is in response to" her exercise of protected rights. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Maldonado asserts the Franklins' lawsuit targets her engagement in all three types of protected activities under the TCPA — the right to petition, to associate, and to engage in free speech. *See id.* In determining whether Maldonado met her burden to show she was engaged in a protected activity, we consider the pleadings, along with any

affidavits. *Id.* § 27.006(a). The supreme court recently observed that the basis of a legal action is determined by the plaintiff's allegations, and "the plaintiff's petition . . . is the 'best and all-sufficient evidence of the nature of the action.'" *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (internal citations omitted). Therefore, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Id.*

As noted above, the underlying factual allegation of the Franklins' slander claim is that Maldonado repeatedly called ACS falsely asserting that the Franklins have "engaged in criminal conduct in the treatment of their dog." Their libel claim is based on the allegation that Maldonado posted written statements online falsely stating that the Franklins "engaged in criminal behavior in the treatment of their dog" and they "are guilty of cruel treatment and neglecting their dog." Thus, the basic allegations are that Maldonado made verbal and written statements falsely accusing the Franklins of criminal conduct in the cruel and neglectful treatment of their dog.

*Right to Free Speech*

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "communication" includes "a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" is defined to include an issue related to "health or safety," "environmental, economic, or community well-being," "the government," "a public official or public figure," or "a good, product, or service in the marketplace." *Id.* § 27.001(7). To meet the "in connection with" requirement, the communication need not specifically "mention" the matter of public concern; rather, the statute requires only that the communication be made "in connection with" "issue[s] related to" one of the specified matters of public concern. *ExxonMobil*, 512 S.W.3d at 900. A mere "tangential relationship" between the communication and the matter of public concern suffices. *Id.*

Maldonado's verbal statements to ACS and written statements posted online in a public forum clearly constitute "communications" within the meaning of the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1); *see also*, *e.g.*, *Hersh*, 526 S.W.3d at 464 (blog post about candor in obituaries to promote suicide prevention was a "communication"). As to whether her communications were made in connection with a "matter of public concern," Maldonado contends that all of her communications, whether made in online posts or verbally, were based on her concern for the "health and safety" of the Franklins' dog and that animal welfare is an established area of "environmental and community well-being," which are all matters of public concern under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). "[T]o determine whether a lawsuit relates to the exercise of free speech, we must look to the context of the entire communication in which the allegedly defamatory statement is made." *Harwood v. Gilroy*, No. 04-16-00652-CV, 2017 WL 2791321, at *3 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.).

Here, the factual allegations in the Franklins' petitions and the other relevant evidence show that all of Maldonado's communications and conduct occurred in the context of the alleged mistreatment of the Franklins' dog. We have previously held that statements about animal welfare and potential mistreatment of animals related to a "matter of public concern" and were protected free speech under the TCPA. *See id.* at *5. In *Harwood*, a series of posts were made on an open forum Facebook page dedicated to preserving habitats and promoting the well-being of wildlife. *Id.* at *1-2. We held that the online statements criticizing a particular wildlife purveyor's ability to safely transport and care for exotic animals were made in the context of promoting the well-being of wildlife, and the communications were therefore made in connection with a matter of public concern and constituted the exercise of free speech. *Id.* at *5. Here, Maldonado's verbal complaints to ACS and online posts on community forums about the Franklins' alleged criminal

mistreatment of their dog were communications made "in connection with" an "issue related to" a matter of public concern—animal welfare. *See ExxonMobil*, 512 S.W.3d at 900; *Harwood*, 2017 WL 2791321, at *5; *see also Cortez v. Johnston*, No. 06-13-00120-CV, 2014 WL 1513306, at *6 (Tex. App.—Texarkana Apr. 16, 2014, no pet.) (mem. op.) ("Criminal allegations involve legitimate public concern.").

The Franklins argue that all of Maldonado's communications were made in the context of a strictly private dispute between neighbors and had no relation to any matter of public concern. In *Hersh*, the supreme court rejected a similar argument that the communications at issue reflected only a private dispute. The court held that an author's comments criticizing a family's decision to omit suicide as their son's cause of death in his obituary did relate to a matter of public concern, reasoning that "[c]learly, suicide prevention and awareness relate to health, safety, and community well-being, all included in the statutory definition of 'matters of public concern.'" *Hersh*, 526 S.W.3d at 467-68. Here, the fact that in August 2018 the City of San Antonio passed an ordinance amending Chapter 5 of the City Code, which is the chapter that "establishes minimum standards of care to safeguard humane care and treatment of animals," to require pet owners to provide outdoor animals with full shade from direct sunlight separate from their designated shelter and access to fresh water goes to show that the health and safety of an outside dog is a "matter of public concern."[3]

Because we hold that Maldonado's verbal statements to ACS and online posts about the Franklins' purported criminal mistreatment of their dog were made in the exercise of her right of free speech under the TCPA, we need not determine whether her conduct also implicates the First Amendment rights to petition and association. *See ExxonMobil*, 512 S.W.3d at 902. We conclude

---

[3] Maldonado provided evidence showing she met with her city councilman's staff in support of the new ordinance before its passage.

that Maldonado has met her burden to demonstrate that the TCPA applies to the Franklins' claims for slander and libel.

### *Respondents' Burden: Prima Facie Case on Each Claim*

Having concluded that the TCPA applies to the Franklins' claims for slander and libel, we next consider whether the Franklins met their burden to establish a prima facie case on the essential elements of those two claims by "clear and specific evidence." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If they failed to do so on any claim, dismissal of that claim is mandatory. *Id.* § 27.005(b).

The term "prima facie case" refers to evidence that is sufficient as a matter of law to establish a certain fact if it is not rebutted or contradicted. *Lipsky*, 460 S.W.3d at 590; *S&S*, 564 S.W.3d at 847. Stated another way, a prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *West*, 573 S.W.3d at 243 n.9 (quoting *Lipsky*, 460 S.W.3d at 590). With respect to the requirement that the evidence be "clear and specific," the supreme court has construed "clear" to mean "'unambiguous,' 'sure,' or 'free from doubt,'" and "specific" to mean "'explicit,' or 'relating to a particular named thing.'" *S & S*, 564 S.W.3d at 847 (quoting *Lipsky*, 460 S.W.3d at 590). Conclusory statements are not probative and do not suffice to establish a prima facie case. *Harwood*, 2017 WL 2791321, at *5. Similarly, "general allegations that merely recite the elements of a cause of action will not suffice." *Lipsky*, 460 S.W.3d at 590-91; *Harwood*, 2017 WL 2791321, at *5. The TCPA standard requires more than mere notice pleadings and the plaintiff "must provide enough detail to show the factual basis for its claim." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). We have stated that in a defamation case implicating the TCPA, the pleadings and evidence must establish the facts of "when, where, and what was said, the defamatory nature of the statements,

and how they damaged the plaintiff" to constitute a prima facie case. *Harwood*, 2017 WL 2791321, at *5.

We examine the pleadings and relevant evidence in a light favorable to the Franklins to determine whether they presented "clear and specific" evidence to establish a prima facie case on each element of their claims for slander and libel. *Id.* Slander and libel are claims for verbal and written false statements, respectively, that fall within defamation. *Tatum*, 554 S.W.3d at 623. To establish a prima facie case of defamation, the plaintiff must show each of the following: (1) the defendant published a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement; and (4) the statement caused damages, unless the statement is defamatory per se, in which damages are presumed. *D. Magazine*, 529 S.W.3d at 434; *Lipsky*, 460 S.W.3d at 593; *Harwood*, 2017 WL 2791321, at 5. The status of the plaintiff determines the requisite degree of fault—a public figure plaintiff must establish the defendant acted with actual malice, while a private plaintiff need only establish the defendant acted negligently regarding the truth of the statement. *Tatum*, 554 S.W.3d at 634; *Lipsky*, 460 S.W.3d at 593. A defamation action serves to protect the personal reputation of the injured party. *Lipsky*, 460 S.W.3d at 591.

There is no dispute that Maldonado published statements about the Franklins to third parties. It is also well established that a false accusation of criminal conduct qualifies as defamation per se for which general damages for loss of reputation and mental anguish are presumed. *Lipsky*, 460 S.W.3d at 593, 596; *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.) (a statement "imput[ing] the commission of a crime" is considered slander per se). Thus, our focus is on whether the Franklins established that: (1) Maldonado's verbal and written statements were false statements of fact (2) that were defamatory to the Franklins, and (3)

that were negligently made with respect to the truth of the statements. *D. Magazine*, 529 S.W.3d at 434.

*False Statement of Fact*

To be actionable, "a statement must assert an objectively verifiable fact rather than an opinion." *Harwood*, 2017 WL 2791321, at *6 (citing *Bentley v. Bunton*, 94 S.W.3d 561, 580-81 (Tex. 2002)). A statement is classified as fact or opinion "based on the statement's verifiability and the entire context in which the statement was made." *Id.* (quoting *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.)). "A statement is an opinion if it is 'by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder' or is 'a loose and figurative term employed as metaphor or hyperbole.'" *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex. App.—Tyler 2008, pet. denied). Whether a statement is a statement of fact or opinion is a question of law. *Am. Heritage Capital*, 436 S.W.3d at 875.

The Franklins' petition alleged that Maldonado's statements accusing them of criminal conduct in the treatment of their dog were "untrue" and that ACS officers had ascertained they committed "no wrongdoing." The entire context within which Maldonado made the verbal and written accusations of criminal conduct against the Franklins shows that she held a strong belief or opinion that the dog was being neglected and treated cruelly. In describing the circumstances leading to her calls to ACS, Maldonado stated in her declaration[4] that during late May and early

---

[4] The Franklins argue we may not consider Maldonado's unsworn declaration attached to her motion to dismiss because it is not an "affidavit." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (referring to "affidavits"). Section 132.001 of the Texas Civil Practice and Remedies Code permits the use of a written "unsworn declaration" in lieu of an "affidavit required by statute" if the declaration meets the statutory requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(c). The statute prohibits the use of an unsworn declaration in certain situations, but an Anti-SLAPP proceeding is not listed. *See id.* § 132.001(b). Having reviewed Maldonado's declaration attached to her amended motion to dismiss, we conclude it substantially complies with section 132.001's requirements. We further note that the Franklins did not obtain a ruling on their "hearsay and speculation" objections to several paragraphs in Maldonado's declaration; therefore, no error was preserved for review. TEX. R. APP. P. 33.1(a).

June 2018 when the heat index was over 100 degrees, she "observed the dog pacing the enclosure, appearing to look for a cool spot to lie down. The dog would pant excessively, pawing at the ground and whining. I believe[d] that these [were] signs that the dog was struggling in the heat." She further stated, "Because I heard the dog whining and observed apparent signs of distress I decided to call Animal Care Services."

However, when Maldonado called ACS and lodged official complaints against the Franklins for animal cruelty, a crime, she went beyond expressing her own opinion and asserted an "objectively verifiable" fact—that the Franklins had committed a criminal offense. *See* TEX. PENAL CODE ANN. § 42.092(b)(3) (a person commits the offense of animal cruelty by intentionally, knowingly, or recklessly failing unreasonably to provide necessary food, water, care, or shelter for an animal in the person's custody). Similarly, Maldonado's written posts stated the Franklins were guilty of animal neglect and cruelty with respect to their dog; she went beyond calling them "deadbeats" as she had done in previous posts. As indicated by the ACS officers' findings that there were no violations (discussed below under negligence), Maldonado's statements asserting criminal conduct were verifiable as either true or false. Maldonado's verbal and written accusations of a specific crime went beyond opinion, mere name-calling, or "rhetorical hyperbole that does not state or imply verifiable fact." *See Harwood*, 2017 WL 2791321, at *6 (discussing statement that a business was a "scam"); *see also Moore*, 166 S.W.3d at 386-87 (holding use of the word "crook" did not impute a specific crime, and was mere "name calling" and general disparagement; therefore it was not slander per se). Therefore, we conclude there is clear and specific evidence that Maldonado made false statements of fact to ACS and in her online posts when she accused the Franklins of committing a criminal offense.

*Defamatory Nature*

"A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing him to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue." *Harwood*, 2017 WL 2791321, at *6; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (defining libel). "If a statement unambiguously and falsely imputes criminal conduct, it is defamatory per se." *Souza v. Tessmer*, No. 04-15-00153-CV, 2015 WL 4932567, at *3 (Tex. App.—San Antonio Aug. 19, 2015, no pet.) (mem. op.). We construe the statement as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive the entire statement. *Harwood*, 2017 WL 2791321, at *6. Here, Maldonado's calls to ACS and online posts unambiguously and directly accused Trenton and Karina Franklin of committing the crime of animal cruelty and the accusations of criminal conduct were shown to be unfounded at that time.[5] There is clear and specific evidence that Maldonado's false accusations of criminal conduct were defamatory to the Franklins.

*Negligence*

In the context of a defamation action, negligence is defined "as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person." *Day v. Federation of State Medical Bds. of the United States, Inc.*, No. 04-18-00605-CV, 2019 WL 2605634, at *7 (Tex. App.—San Antonio June 26, 2019, pet. filed) (quoting *Harwood*, 2017 WL 2791321, at *6). "In other words, the plaintiff must establish that the defendant knew or should have known that the defamatory statement was false." *Day*, 2019 WL 2605634, at *7 (internal citations omitted); *Harwood*, 2017 WL 2791321, at *6. Thus, in order to establish a

---

[5] The new "shade ordinance" amending Chapter 5 of the City Code, which was attached to Maldonado's amended motion to dismiss, provides for "the issuance of a civil citation and criminal citation" up to $2,000 for each violation. Thus, effective August 2, 2018, failing to provide complete shade to an outdoor animal independent of any shelter is now subject to a criminal as well as a civil penalty.

prima facie case on the requisite degree of fault element, the Franklins were required to establish by "clear and specific" evidence that Maldonado knew or should have known that her statements accusing the Franklins of criminal conduct in the treatment of their dog were false at the time they were made. *See Day*, 2019 WL 2605634, at \*7; *see also Harwood*, 2017 WL 2791321, at \*7.

In addition to alleging that Maldonado repeatedly called ACS to falsely accuse them of "criminal conduct in the treatment of their dog," the Franklins also assert in their petition that "Animal Control Services has been to Plaintiffs' home on many occasions, and, in each instance, ascertained that the Plaintiffs have committed no wrongdoing." Trenton Franklin states in his affidavit,[6] "[f]or reasons entirely unknown to me, [Maldonado] has decided that we neglect and abuse our dog, Bolt. Despite numerous police officers and animal control officers explaining to her that the dog is fine and well cared for, she continues to verbally attack me and [my] family." In her declaration, Maldonado admitted calling ACS "3 or 4 times in late May and early June during a very hot spell" and stated, "[o]n one occasion, I know that Animal Care Services visited. I explained the situation to the officer; she said there was nothing she could do."[7] Copies of Maldonado's posts were attached to her motions to dismiss and to the Franklins' response. In a May 28, 2018 post on the neighborhood email group, Maldonado stated, "And, yes, I've called ACS so many times they probably see my number and delete the message . . . ACS comes out, sees a plastic dog house (in full sun) and a water bowl (also in full sun) a non-dead dog and go, Yep. Everything looks all right here! And leave." Maldonado added at the end, "If you'd like to

---

[6] Karina Franklin's affidavit states merely that, "[Maldonado] accuses me of cruelty towards our dog, Bolt."

[7] Maldonado also stated in her declaration that, "[o]n June 6 or 7, I noticed a trio of SAFFE Officers entered into the Franklins' back yard. A day or two after this, I noticed that the Franklins had opened up the entire back yard to the dog. The dog was returned to his enclosure back in late June and was being kept there up until around the time the new shade ordinance passed on August 2nd, 2018."

tell them that we need better city ordinances . . . please write to them . . . ." In another post on June 4, 2018, Maldonado stated,

> Animal Care Services <u>is not telling her her dog is fine</u>. Animal Care Services is telling her that she meets the MINIMUM LEGAL REQUIREMENTS for taking care of the dog. <u>Not</u> that the dog is fine. Animal Care Services doesn't assess the health of the dog. ACS officers aren't trained to assess a dog for heat stress or dehydration – I know, I asked them – and <u>they won't even try</u>. They look for shelter (in this case a plastic dog house), access to water (doesn't even have to be cool) and a non-dead dog. That's it. They're not even looking for shade – or insulation in the winter, for that matter.

Finally, the Franklins attached a copy of an ACS report to their response to the motion to dismiss. The ACS activity report shows a call for "neglect/other" was received from Maldonado against Trenton Franklin on June 1, 2018. The report indicates the call was made due to the expected temperature over 100 degrees and the caller's observation that the dog was suffering in the heat. The responding ACS officer, Officer Chapa, stated that he conducted a history search for the location and saw that two other ACS officers had been there on prior calls and "they both found the call unfounded due to the canine having everything its [sic] supposed to have." After doing a welfare check on the dog at the Franklins' residence, Officer Chapa determined there were "no violations at this time" because "the dog indeed has shelter and access to water" and "appeared to be active and responsive and in good healthy conditions." After exiting the Franklins' yard, Officer Chapa encountered Maldonado and "explained to her that the canine has everything he's supposed to have, water and shelter" and "explained that their [sic] were no violations at this time." Maldonado thanked him and stated that "she would keep complaining."

Viewing the allegations in the Franklins' petition and viewing the evidence favorably to the non-movant Franklins, as we must, we conclude there is "clear and specific" evidence to establish a prima facie case that Maldonado knew, or should have known, that her statements accusing the Franklins of committing criminal conduct in the treatment of their dog were not true

after ACS officers informed her they found no violations as early as May 28, 2018. *See Day*, 2019 WL 2605634, at \*7; *see also Harwood*, 2017 WL 2791321, at \*7.

In sum, having considered the pleadings and relevant evidence, we conclude the Franklins presented sufficiently clear and specific evidence to establish that Maldonado's verbal and written statements accusing them of animal cruelty were false statements of fact, rather than mere opinion, the statements were defamatory as to the Franklins, and Maldonado knew or should have known that her accusations of criminal conduct were false. Therefore, we hold the Franklins met their burden to establish a prima facie case on their defamation claims of slander and libel. The denial of Maldonado's motion and amended motion to dismiss as to those claims was proper.

## CONCLUSION

Based on the foregoing analysis, we conclude that Maldonado's motion and amended motion to dismiss were timely only as to the Franklins' slander and libel claims; therefore, the Franklins' other claims were not subject to a TCPA motion to dismiss. Maldonado established that the TCPA applies to the Franklins' slander and libel claims, but the Franklins met their burden to establish a prima facie case on those claims and Maldonado did not plead or prove a defense. Therefore, Maldonado's motion and amended motion to dismiss the slander and libel claims were properly denied. Accordingly, we affirm the trial court's order and remand this case to the trial court for further proceedings consistent with this opinion.

Liza A. Rodriguez, Justice